RECEIVED
BY MAIL
FEB 23 2005
CLERK US DIST COURT
MINNEAPOLIS MN

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil Action No. 01-1563 RHK/RLE

Lance Gerald Milliman,

Plaintiff,

v.

Betty Jean Lindemoen, et al.,

Defendants.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

## INTRODUCTION

Plaintiff Lance Gerald Milliman, has filed a pro se complaint pursuant to the Federal Rules of Civil Procedure. Plaintiff seeks monetary, declaratory and injunctive relief for violations of his property and other constitutional rights both under the United States Constitution and the Minnesota State Constitution as more specifically set forth in the complaint. Further, the plaintiff claims civil conspiracy on the part of the defendants and that they had a meeting of the minds and came to an agreement to violate the plaintiiff's constitutional rights under color of law.

Plaintiff requests injunctive relief in his complaint, and moves for a temporary restraining order and a temporary injunction to enjoin Michael Campion, the acting Commissioner of the Minnesota Department of Public Safety, and all others acting in active participation or in concert with these defendants from suspending the plaintiff's Minnesota Commercial Driver's License pursuant to Minnesota Statute 518.551 Subds. 12 and 13 pending further order of this Court. The plaintiff further requests, that the Anoka County defendants (public authority) and all others acting in active participation or in concert with these defendants, to include child support magistrates, be enjoined from taking any action to suspend the plaintiff's Minnesota Commercial Driver's License pursuant to Minnesota Statute 518.551 Subds. 12 and 13. If Said action has already occurred, Anoka County (public authority) shall take immediate action to cause reinstatement pending further order of this Court. Finally, the plaintiff requests that defendant Betty Jean Lindemoen and the Anoka County defendants (public authority) and all others in active participation or concert with these defendants, to include child support magistrates, are enjoined from further collection activity or harassment of the plaintiff pending further order of this Court.

Plaintiff must demonstrate why his injunctive relief should issue and caselaw has enumerated five factors that must be considered. This involves the nature of the relationships, the hardships of the parties, public policy considerations, the probability of success on the merits and finally, the administrative burden on the courts if injunctive relief were granted. This Court based upon the evidence and argument shown, should grant the plaintiff's request for temporary injunctive relief.

## FACTS

The plaintiff received a letter from Kelly O'Brien, Child Support Officer, dated January 5, 2005 stating that it was a Notice of Driver's License Suspension for Non-Compliance with payment agreement. The notice states as follows:

The purpose of this notice is to tell you that you have failed to remain in compliance with your written payment agreement for child support and /or spousal maintenance. Failing to remain compliant with an approved written payment agreement is a basis to suspend a driver's license according to Minnesota Statute

SCANNED
FEB 23 2005
U.S. DISTRICT COURT MPLS

section 518.551 subd. 13. If you do not take one of the following steps within thirty (30) days of the date of this notice, we will direct the Commissioner of the Minnesota Department of Public Safety to suspend your driver's license.

How to Prevent Suspension. You can prevent the suspension by taking one of the actions listed below within thirty (30) days of the date of this notice:

Pay the total amount past-due on your payment agreement; pay your child support arrears in full; or request a hearing in writing to contest the suspension. Send your request to your child support agency. The following are issues the court may take into consideration:

You do not owe the delinquent amount of at least one month on your payment agreement, or you are complying with a written payment agreement.

The plaintiff has demanded a hearing contesting the suspension and did so on February 2, 2005 and has not received any response from the Anoka County defendants (public authority). As stated in the motion for a temporary restraining order, This is the second time that the Anoka County defendants have attempted to suspend the plaintiff's Minnesota Commercial Driver's License, and people pay thousands of dollars to psychologists for the advice I am providing free, "the best indicator of these defendants future actions is their actions taken in the past under similar circumstances."

At the first suspension hearing back on August 31, 2000, the Anoka County defendants (public authority) with the help of defendant Beverly Anderson, a Child Support Magistrate held a hearing on the issue of suspending plaintiff's Minnesota Commercial Driver's License and then never issued any written or oral findings of fact, conclusions of law and order and never served the plaintiff a copy of the child support magistrate's order. Said withholding of service of the order caused a ninety (90) day automatic stay to expire under said Statute causing the suspension to take effect automatically. By doing so, these defendants effectively cut-off the plaintiff's appellate rights by bypassing the appellate process and the suspension that took place severely damaged the plaintiff and his significant other economically over the next two (2) year period and continues to severely damage them today.

The status on the current suspension is unknown, for this reason the plaintiff brings this motion for a temporary restraining order and and preliminary injunction before this Court and requests that this Court grant the relief requested. If the Court fails to grant the relief requested, the plaintiff will lose any ability he has to support himself and pay monthly living expenses necessary for his survival. If the suspension takes place, the plaintiff will be placed back into a position of never being able to pay his back child support because the plaintiff's Minnesota Commercial Driver's License is plaintiff's only means of supporting himself in any respect. He will lose any assets he has, including his house, which might be depended upon to pay back child support at some later time and this in turn will damage the plaintiff's credit standing and file and cause the plaintiff to be unable to get a loan to pay backchild support.

If the suspension is allowed to take place, the plaintiff will be financially ruined and irreparable harm, damage and injury that will result from which the plaintiff may not be able to recover and he does not have an adequate remedy at law and that the defendants will continue to harass and attempt to collect child support under orders that may not stand up to judicial scrutiny.

## ARGUMENT

### THE COURTS INVOLVEMENT IN ACTIONS WHERE A TEMPORARY RESTRAINING ORDER OR A TEMPORARY INJUNCTION IS REQUESTED

The issuance of an injunction is governed by general principles of equity. Stringer v. United States, 471 F.2d 381, 384 (5th Cir. 1973), cert. denied, 93 S.Ct. 2775, 412 U.S. 943, 37 L.Ed.2nd 404 (1975). There are several doctrines that come into play in the court of equity such as the doctrine of unclean hands as it relates to the matter involved in the action. Kelty v. City of Minneapolis, 157 Minn. 430, 196 N.W. 487 (1923). A party in a court of equity must do equity. Hernlund v. Town & Country Motors, Inc., 159 Minn. 125, 198 N.W. 662 (1924).

Further, the issuance of a temporary restraining order or a temporary injunction except in unusual cases, rests with the sound discretion of the court. Conner v. Brierley, 57 F.R.D. 144 (D. Pa. 1979); Glover v. Minneapolis Building Trades Council, 215 Minn. 533, 10 N.W. 2d 481 (1943); Seward v. Schrieber, 240 Minn. 489, 62 N.W. 2d 48 (1953). The power to grant injunctive relief should be used sparingly, cautiously and only when the necessity for such relief is clear. Plumbers Local Union No. 519 v. Construction Ind. Stabilization Comm., 350 F. Supp. 6 (D. Fla. 1972); General Minnesota Utilities Company v. Carlton County Cooperative Power Association, 221 Minn. 510, 22 N.W. 2d 673 (1946); AMF Pinspotters, Inc. v. Harkins Bowling, Inc., 260 Minn. 499, 110 N.W. 2d 348 (1961).

### SITUATIONS IN WHICH A TEMPORARY RESTRAINING ORDER AND/OR A TEMPORARY INJUNCTION MAY ISSUE

The procedures for obtaining temporary injunctive relief are technical and exacting. Such relief is available only in extraordinary circumstances where all other means of resolving the matter have

failed or would be inadequate. The party seeking a temporary injunctive remedy has the burden of showing that sufficient grounds exist to grant the relief requested. Such relief will be appropriate when:

1. The defendants are doing things that make it hard for you to continue your lawsuit. See, e.g. Brenneman v. Madigan, 343 F. Supp. 128 (N.D. Cal. 1972); Valvano v. Mc Grath, 325 F. Supp. 408 (E.D.N.Y. 1971).
2. The defendants are doing things, that would render any court decision against such activity meaningless in the future. See, e.g. Gilmore v. Lynch, 319 F. Supp. 105 (N.D. Cal. 1970), aff'd sub nom., Younger v. Gilmore, 404 U.S. 15 (1971).
3. The plaintiff is in danger of being seriously injured between the time the plaintiff files the complaint and the time the court decides the plaintiff's case, and nothing the court could do later in its final order would compensate the plaintiff for the harm the plaintiff suffered. See, e.g. Inmates of Attica Correctional Facility v. Rockefeller, 453 F. 2d 12 (2d Cir. 1971).
4. A party will suffer irreparable injury before a trial on the merits. Thomas v. Ramberg, 240 Minn. 1, 60 N.W. 2d 18 (1953).
5. The relief requested in the action will be ineffectual or impossible to grant unless the status quo is maintained. Pickering v. Pasco Marketing, Inc., 303 Minn. 442, 228 N.W. 2d 562 (1975).
6. The conduct requested enjoined threatens real and substantial rights of a party. J.F. Quest Foundry Co. v. International Molders & Foundry Workers Union No. 132, 216 Minn. 436, 13

N.W. 2d 32 (1944).

7. No adequate remedy at law exists. AMF Pinspotters, Inc. v. Harkins Bowling, Inc., 260 Minn. 499, 110 N.W. 2d 348 (1961).

THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND/OR A TEMPORARY INJUNCTION IS GOVERNED BY RULE 65 OF THE RULES OF CIVIL PROCEDURE

This rule sets forth the procedures involved in obtaining restraining orders and temporary injunctions. Their purpose is to preserve the rights of the parties pending determination of the litigation or to maintain the status quo of the matter in controversy until judgment is rendered in the underlying litigation. Pickering v. Pasco Marketing, Inc., 303 Minn. 442, 446, 228 N.W. 2d 562, 565 (1975); Also, See, Berggren v. Town of Duluth, 304 N.W. 2d 24, 27 (Minn. 1981); Hamilton v. Wood, 55 Minn. 482, 57 N.W. 208 (1893). A temporary restraining order typically is sought and issued on an ex-parte or emergency hearing basis and operates to prevent immediate irreparable injury until a hearing can be conducted to determine the need for a temporary injunction. Berg v. Wiley, 264 N.W. 2d 145 (Minn. 1978).

The temporary restraining order may be obtained without notice to the opposing party if:

It clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and the applicant states to the court in writing the efforts, if any, which have been made to give notice or the reasons supporting his clai[m] that notice should not be required. Such a situation will occur if the issuance of a restraining order without notice is the only method to

preserve the status quo and the rights of the moving party. Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 94 S.Ct. 1113, 415 U.S. 423, 39 L.Ed.2. 435 (1974). When the party actually receives notice of the application for a restraining order, however, the procedure to be followed does not differ from that on an application for a preliminary injunction. See e.g. MLZ, Inc. v. Fourco Glass Co., 470 F. Supp. 273, 275 (D. Tenn. 1978). (Where plaintiff applied for temporary restraining order but adverse party had notice and was present and participated in hearing thereupon, application would be treated as one for preliminary injunction).

A temporary injunction may be issued pursuant to Rule 65.02 of the Rules of Civil Procedure. The rule does not describe the proof required for issuance, however, caselaw has enumerated the factors to be considered in determining whether to grant a temporary injunction. These factors include:

1. The nature of the relationship between the parties before the dispute giving rise to the request for relief;

2. The harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

3. The likelihood of success on the merits;

4. The Public Interest; and

5. Administrative burdens in enforcing a temporary decree.

Dahlberg Brothers, Inc. v. Ford Motor Company., 272 Minn. 264, 137 N.W. 2d 314 (1965); Miller v. Foley, 317 N.W. 2d 710 (Minn.1982); Edin v. Josten's, Inc., 343 N.W. 2d 691 (Minn.App.1984); Paradata of Minnesota, Inc. v. Fox, 356 N.W. 2d 852 (Minn.App.1984); Dataphase

Systems, Inc. v. C.L. Systems, Inc., 640 F. 2d 109 (8th Cir. 1981), (En Banc); Jackson v. Northern States Power Co., 343 F. Supp. 265 (D. Minn. 1972). As in a request for a temporary restraining order, security from the applicant is required in order to obtain a temporary injunction. The amount of the security shall be determined by the trial court and may be waived entirely, if appropriate. Bio-Line, Inc. v. Wilfley, 366 N.W. 2d 662, 665 (Minn.App.1985); Also, See, In re Petition of Giblin, 304 Minn. 510, 525, 232 N.W. 2d 214, 222 (1975).

## NATURE AND BACKGROUND OF RELATIONSHIP

This is a situation were there has been over a twenty (20) year battle back and forth between the plaintiff and the Anoka County defendants over constitutional issues and Anoka County's policies and practices as they relate to violating people's constitutional rights. This matter alone dates back to 1996 and the plaintiff believes shows the one-sided discriminatory enforcement of child support laws which are designed to be non-discriminatory and the child support statutes which apply equally to both parents. This is yet another attempt for Anoka County to stomp the plaintiff into the ground and ruin the plaintiff financially, this is a classic case of the haves against the have nots. Here the government (Anoka County and the State of Minnesota) with all its resources attacks one of its citizens and attempts to offer him up as a sacrifice for the wrongs of the world and attempts to ostracize that citizen to a life of poverty and constitutional intrusions because of foolish mistakes made in his youth. These Anoka County defendants have taken it upon themselves to attempt to stop the plaintiff from ever amounting to anything. They have already had a hand in destroying the relationship between a father and his children what more can they do to the plaintiff? Between the Anoka County defendants and defendant Betty Jean Lindemoen, the plaintiff's children have been taught that the plaintiff is some kind of monster (a dead-beat dad) simply because he cannot afford to pay his child support.

The situation between the plaintiff and defendant Betty Jean Lindemoen is that after a destructive co-dependent relationship and a disastrous eleven (11) year marriage the divorce was finalized in February of 1989. The parties have remained bitter and refuse to communicate. The children of the parties are emancipated and there is no on-going child support obligation. Defendant Lindemoen has been quick to cooperate with Anoka County in beating the plaintiff to the ground because if she does, Anoka County will continue to chase the plaintiff for the full amount of the child support expended and continue to attempt to destabilize the plaintiff by suspending his Minnesota Commercial Driver's License and defendant Lindemoen gets out of paying her share of the child support and her Minnesota Driver's License is left intact and she is able to work without obstacle. In fact, as the plaintiff understands it, defendant Lindemoen has bought her second house after losing the first one because of her financial irresponsibility and the plaintiff struggles to maintain one home and live at the same time while constantly being bombarded with threats of, and actual license suspensions from these defendants.

## HARM TO BE SUFFERED

This requires a balancing between the harm suffered by the plaintiff if the temporary restraining order is not issued and the harm suffered by the defendants if the temporary restraining order is issued. The plaintiff is working the equivalent of about 20 hours per week. It is not much work now but the plaintiff expects that his economic position will improve. The plaintiff is in no way limiting his employment in an attempt to avoid paying his child support obligation whatever that may be as these defendants would have this Court believe. This is all the work that is available to the plaintiff at this time. However, the will be more work in the future. However, in order to maintain this employment the plaintiff must have his Minnesota Commercial Driver's License.

As set forth above, the balance has been one-sided in favor of the defendants simply because they are bigger and have more resources than the plaintiff and two-thirds of the other team is the state and county government and the other third is cooperating with the two of them fully so they will not come after defendant Lindemoen for the monies she owes for her share of child support. If the Court fails to enjoin the suspension of the plaintiff's Minnesota Commercial Driver's License and the conduct of these defendants, the plaintiff will lose the mediocre job he does have and along with that he will lose any means he has by which to support himself or pay monthly living expenses for survival. He will lose his home and his credit rating so that he will never be able to pay any back child support while the defendants suffer none of this grief. The plaintiff will never be able to recover from this loss at this time and nothing the Court could do later would compensate the plaintiff for the loss he will sustain now as the plaintiff is basically living from paycheck to paycheck and any interuption in the flow of income at this time would be devastating. This is not a situation where the plaintiff has a large income and is simply ignoring his obligations, this is a situation where the plaintiff simply is unable to afford child support payments at this time and he should not suffer financial ruin because of it. The defendants will continue to harass the plaintiff in an attempt to collect funds pursuant to orders of administrative law judges and child support magistrates, when the

legality of orders are questionable, at best. Further, the status on the current suspension is unknown and based upon these defendants past actions it is clear that they do not wish to cooperate in resolving these issues.

LIKELIHOOD OF PREVAILING

It is very hard to estimate the likelihood of prevailing on the merits. However, this plaintiff has reviewed caselaw both state and federal and there is no measure in the caselaw that states, for example, that the plaintiff must have a fifty percent (50%) or better of prevailing. The caselaw in effect states that the plaintiff can have much less of a chance of prevailing and still obtain a temporary restraining order and a temporary injunction.

PUBLIC POLICY

There is a strong public policy against unconstitutional acts by government and other parties acting in active participation or concert with them. The United States Constitution and the Minnesota State Constitution protect the plaintiff from oppressive attacks by the government which circumvent the citizen's constitutional rights. The plaintiff has a right to pursue happiness under said constitution and he has a right to enjoy his privileges and property and further, he has a right to defend those privileges and property from constant attack from the government.

ADMINISTRATIVE BURDEN

There appears to be very little administrative burden to the courts if injunctive relief were granted and, therefore, this factor is not significant in the consideration of the temporary injunction.

CONCLUSION

For the foregoing reasons, plaintiff's request for a temporary restraining order and a temporary injunction should be granted.

Respectfully submitted,

Dated: February 21, 2005

Lance Gerald Millman
Plaintiff pro se
60009 373rd Street
Eden Valley, Minnesota 55329
(320) 420-3540