**STATE OF MINNESOTA** | **DISTRICT COURT**

**COUNTY OF ANOKA** | **TENTH JUDICIAL DISTRICT**
**CASE TYPE: SUPPORT**

In Re the Marriage of:
Betty Jean Milliman,
Petitioner,

~~vs.~~ and

Lance Gerald Milliman,
Respondent,

County of Anoka,
Intervenor.

FILED
FEB 25 2003
Jane F. Morrow
Court Administration
Anoka County, MN
By ______
Deputy

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

Court File No.: F9-98-10474
IV-D Case No.: 0010268225 01
County Attorney File No.: 5-96-6532B

(The parties shall be referred to below as follows: Anoka County, as "the County"; the State of Minnesota, as "the State"; Betty Jean Milliman a/k/a Lind~~Obligee's Name~~, as "the Obligee"; and Lance Gerald Milliman~~Obligor's Name~~, as "the Obligor." Only those items marked _X_ apply.)

The above-entitled matter came before the Honorable Jill Lebow Proholsky presiding Child Support Magistrate, by this writing of the parties herein,

pursuant to Respondent's motion to reinstate his driver's license ~~modify ongoing child support obligation under Minn. Stat. § 518.64 and the Notice of Hearing under Minn. Stat. § 484.702, Sec 2, Sub 5 and Rule 364.04 of the Expedited Child Support Process Rules (2001)~~, served upon the parties on or about 11-15-02.

or

pursuant to an Anoka County District Court/Child Support Magistrate's Order dated __________.

Kay M. Gavinski, Assistant Anoka County Attorney, represented ~~appeared on behalf of~~ Anoka County which is responsible for the enforcement of child support obligation. Other appearances were as follows:

X a. The Obligee ~~was/was not present with/without counsel~~ represented herself.

X b. The Obligor ~~was/was not present with/without counsel~~ represented himself.

__ c. Also present was __________.

The Child Support Magistrate upon reviewing the files, affidavits and proceedings herein, ~~and upon hearing the evidence~~/reviewing the agreement of the parties presented, and being fully advised, does hereby make the following:

[redacted]

## FINDINGS OF FACT

X 1. The parties have reached an agreement prior to the hearing, have waived their right to a hearing, and have agreed that an order be entered in accordance with the findings set out below.

X 2. The Obligor is not a member of the Armed Services of the United States.

__ 3. The Obligor is a member of the Armed Services of the United States, but waives his/her rights under the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, with regard to this action, and this matter can proceed in compliance with that Act.

X 4. The Obligor's birth date is: 8-12-57.

X 5. The Obligor's mailing address is: P.O. Box 61, South Haven, MN 55382-0061.

X 6. The Obligee's birth date is: 3-26-61.

X 7. The Obligee's mailing address is: 229 7th Street North, Apt. 2, Mora, MN 55051.

X 8. The social security numbers of the parties and the child subject to this proceeding, if known, are contained on the Confidential Information Form 11 which has been filed with the court.

X 9. The Obligor, Lance Gerald Milliman, and Betty Jean Milliman n/k/a Lindemoen, the Obligee, were married on 6-25-77.

X 10. The Obligor and the Obligee are the parents of the following child(ren): All four of the parties children are emancipated. The youngest child, Mellissa, emancipated effective 8-15-02.

______ Date of Birth ______
______ Date of Birth ______
______ Date of Birth ______

__ 11. The Judgment and Decree (as amended) of the ______ County Court dated ______, dissolved the marriage of the parties and required the Obligor to pay ongoing child support for ____ child(ren) at the rate of $______ per month/week effective ______.

__ 12. The Judgment and Decree (as amended) ordered the following for medical support: $______ beginning ______ for unreimbursed medical and dental expenses; and for child care contribution: $______.

__ 13. The Judgment and Decree (as amended) of the ______ County Court dated ______ required the ______ to provide medical and dental insurance for the minor child(ren); required the ______ to pay ___% of the minor child(ren)'s unreimbursed medical and dental and ______ expenses and $______ for a contribution to child care expenses effective ______.

__ 14. The Judgment and Decree (as amended) of the ______ County Court dated ______ also required the Obligor to pay spousal maintenance for ______ months at the rate of $______ per month/week effective ______.

___ 15. The Obligee, ______________________ gave birth to ______________________ on ______________________ and paternity was adjudicated on ______________________ in the County of ______________________, State of ______________________.

___ 16. The Obligor signed a Recognition/Declaration of Parentage on ______________________ naming him the legal father of ______________________ born ______________________.

___ 17. The Obligor is the parent of the following minor child(ren) of this action:

______________________ Date of Birth ______________________
______________________ Date of Birth ______________________
______________________ Date of Birth ______________________

___ 18. The Order of the Anoka County District Court/Child Support Magistrate/Administrative Law Judge dated ______________________ required the Obligor to pay ongoing child support at the rate of $__________ per month/week, commencing ______________________.

___ 19. The Order of the Anoka County District Court/Child Support Magistrate/Administrative Law Judge dated ______________________ required the Obligor to pay the following for medical support: $__________, for unreimbursed medical and dental expenses; and for child care contribution: $__________.

___ 20. The Judgment and Decree (as amended) of the ______________________ County Court dated ______________________ required the______________________ to provide medical and dental insurance for the minor child(ren); required the ______________________to pay ___% of the minor child(ren)'s unreimbursed medical and dental and ______________________ expenses and $__________ for a contribution to child care expenses effective ______________.

___ 21. The Order of the Anoka County District Court/Child Support Magistrate/Administrative Law Judge dated ______________________ required the Obligor to pay ongoing child support at the rate of $__________ per month commencing ______________________. The Order temporarily reduced the child support obligation to $__________ per month on condition that the Obligor is fully participating in the, Minnesota Parents' Fair Share Program and on condition that public assistance is being expended on behalf of the minor child(ren). If public assistance is terminated or if the Obligor failed to participate fully in the project, child support was to immediately and automatically return to $__________ per month.

___ 22. The Obligor also has a legal duty to support the following additional minor child(ren) that are not a party to this action, and are residing with the Obligor:

______________________ Date of Birth ______________________
______________________ Date of Birth ______________________
______________________ Date of Birth ______________________

___ 23. The Obligor also has a legal duty to support the minor child(ren) ______________________ Date of Birth ______________________; ______________________ Date of Birth __________ __________ that is/are not a party to this action and is/are not residing with the Obligor. The support obligation is from the County of ______________________, State of ______________ __________, and is currently being maintained by the County of ______________________, State of ______________________. The support obligation is as follows:

Child Support: $__________
Medical Support: $__________
Child Care: $__________
Arrears: $__________

The Obligor is/is not paying this support obligation.

X 24. By the order dated 9-15-00, the Commissioner of Public Safety was directed to suspend the obligor's driver's license.

X 25. The Obligor:

____ a. Is employed by ____________________, at ________________

X b. Is currently unemployed but expects to be able to obtain employment once his driver's license is reinstated.

____ c. Receives income from a non-employer, whose name and address is: ________________

____ d. Is not employed.

____ e. Has the ability to work full-time employment at Minnesota minimum wage.

____ f. Has the ability to work full-time employment at 150 percent of the federal minimum wage.

____ g. Has the ability to work ________ hours per week at $__________ per hour.

____ h. Is or may be licensed by ____________________________.

____ i. ____________________________________.

____ 26. The Obligor has/has the ability to earn an average net monthly income from Wages/Unemployment Benefits/Other of $__________, after the following deductions:

____ a. $__________ for federal and state taxes and social security;

____ b. $__________ for medical insurance which does/does not include the child(ren) covered by this order;

____ c. $__________ for union dues;

____ d. $__________ for pension;

____ e. $__________ for a child support order (that is currently being paid);

____ f. $__________ for a maintenance order that is currently being paid;

____ g. $__________ other: ____________________________.

____ 27. The Obligor's income was calculated as follows:

____ a. Earnings of $__________ per hour, __________ hours per week.

____ b. Employment Verification Response dated ____________________ which indicates ____________________________.

____ c. Average earnings as reported by the Department of Economic Security for the following quarters: ________________________, totaling $__________ for ________ months.

____ d. Average earnings from paystubs dated: ____________________ totaling $__________ for ________ weeks/months.

____ e. Average earnings according to the year-to-date earnings indicated on the paystub from ____________________ dated ____________________ totaling $__________.

____ f. Year __________ tax returns indicating a yearly income totaling $__________.

____ g. ____________________________________________________________________________.

___ 28. The Obligor's ability to earn income was calculated as follows:

____ a. Earnings of Minnesota minimum wage, currently $5.15 per hour, _______ hours per week.

____ b. Earnings of 150 percent of federal minimum wage, currently $7.73 per hour, ______ hours per week.

____ c. Imputed earnings of $_________ based upon ______________________________.

____ d. Imputed earnings of $__________ per hour based upon the salary survey for year ____________, for a ______________________________, located in ______________________________.

____ e. ______________________________ ______________________________.

___ 29. Obligor claims monthly expenses totaling $__________ in Modification Financial Statement for him/herself and a household of ______ adult(s) and ______ child(ren). The obligor has no legal obligation to support ______ members of his household. These expenses have not been verified.

___ 30. Medical and dental insurance coverage for the child(ren) are as follows:

____ a. The Obligor carries medical and dental insurance at the cost shown above as a deduction to income.

____ b. The Obligor can obtain medical and dental insurance through a group plan/on the open market at a cost of $__________ per month (shown as a deduction to income above).

____ c. The Obligee carries medical and dental insurance at the cost of $__________ per month.

____ d. The Obligee can obtain medical and dental insurance through a group plan at a cost of $__________ per month.

____ e. The Obligor has/does not have the ability to contribute to the medical support of the minor child(ren).

____ f. The Obligee has/does not have the ability to contribute to the medical support of the minor child(ren).

____ g. Neither the Obligor nor the Obligee has dependent medical and dental insurance coverage available on a group basis or through an employer or union.

___ 31. The issues of unreimbursed medical and dental expenses for the child(ren) are as follows:

____ a. The available dependent medical and dental insurance may not pay all of the reasonable and necessary medical and dental expenses of the minor child(ren) including, but not limited to, necessary orthodontic and eye care expenses.

____ b. There are no unreimbursed medical and dental expenses under the Medical Assistance and MinnesotaCare Programs.

____ c. The Obligor has/does not have the ability to contribute to the payment of unreimbursed medical and dental expenses of the minor child(ren).

____ d. The Obligee has/does not have the ability to contribute to the payment of unreimbursed medical and dental of the minor child(ren).

___ 32. The Obligee receives from the State for the minor child(ren):

____ a. Minnesota Family Investment Program (MFIP), creating an assignment of support rights pursuant to Minn. Stat. §256.741, subd. 2.

(1) Public assistance has been paid since ______________________________.

(2) The public assistance grant for ______________________________ was $__________ for the month.

(3) As of ______________________, the amount of public assistance expended totaled $____________.

____ b. Medical Assistance or MinnesotaCare.
____ c. Child Care Assistance Subsidy.
____ d. Non-public assistance child support services.

__ 33. The Obligee:
____ a. Is employed by ______________________, at ______________________
______________________________________________.
____ b. Receives income from a non-employer, whose name and address is: ______________________________________________.
____ c. Is not employed.
____ d. Has the ability to work full-time employment at Minnesota minimum wage.
____ e. Has the ability to work full-time employment at 150 percent of the federal minimum wage.
____ f. Has the ability to work ____ hours per week at $________ per hour.
____ g. Is or may be licensed by ______________________.
____ h. ______________________________________________
______________________________________________.

__ 34. The Obligee has/has the ability to earn an average net monthly income from Wages/Unemployment Benefits/Other of $__________, after the following deductions:
____ a. $__________ for federal and state taxes and social security;
____ b. $__________ for medical insurance which does/does not include the child(ren) covered by this order;
____ c. $__________ for union dues;
____ d. $__________ for pension;
____ e. $__________ for a child support order (that is currently being paid);
____ f. $__________ for a maintenance order that is currently being paid;
____ g. ______________________________________________
______________________________________________.

__ 35. The Obligee's income was calculated as follows:
____ a. Earnings of $__________ per hour, ________ hours per week.
____ b. Employment Verification Response dated ________________ which indicates ______________________________________________.
____ c. Average earnings as reported by the Department of Economic Security for the following quarters: ______________________________________, totaling $__________.
____ d. Average earnings from paystubs dated: ______________________ totaling $__________ for ________ weeks/months.
____ e. Average earnings according to the year-to-date earnings indicated on the paystub from ______________________ dated ______________________ totaling $__________.
____ f. Year __________ tax returns indicating a yearly income totaling $__________.
____ g. ______________________________________________
______________________________________________.

__ 36. Earnings are imputed to the Obligee only to calculate the allocation of liability of unreimbursed medical and dental expenses or child care contribution.

___ 37. The Obligee's ability to earn income was calculated as follows:

____ a. Earnings of Minnesota minimum wage, currently $5.15 per hour, _______ hours per week.

____ b. Earnings of 150 percent of federal minimum wage, currently $7.73 per hour, _______ hours per week.

____ c. Imputed earnings of $______ based upon_______________________________.

____ d. Imputed earnings of $___________ per hour based upon the salary survey for year _________ for a _________________________, located in _____________ _______________________________________________.

____ e. Earnings are imputed to the Obligee only to calculate the allocation of liability of unreimbursed medical and dental or child care contribution.

____ f. _______________________________________________ _______________________________________________.

___ 38. Verification of Obligee's monthly income has been provided, in the form of _____________ _______________________________________________.

___ 39. Obligee claims monthly expenses for him/herself and household of ____ adults(s) and ____ child(ren) totaling $___________ per month in the Modification Financial Statement. _______ in the household are the Obligor's child(ren). These expenses do/do not include work/education related child care costs shown below. The monthly expenses have not been verified.

___ 40. There are no work or education related child care costs.

___ 41. The Obligee has work/education related child care costs of $___________ per month. This cost was calculated by subtracting twenty-five percent (25%) of the gross annual child care costs to compensate for the amount of federal and state income tax credits available to the Obligee for child care costs of $____________ from the actual amount paid for child care on an annual basis $____________. Gross annual child care costs include payments made directly by the Obligee as well as any subsidies paid toward the child care costs by the State.

___ 42. The child care costs are an average monthly cost based on the estimated annual cost. The calculation is as follows: _______________________________________.

___ 43. Child care assistance is currently being expended on behalf of the minor children. Of the average gross monthly cost totaling $___________, the average monthly child care subsidy totals $___________ and the average monthly parent co-pay totals $___________.

___ 44. With respect to the Obligor's ongoing contribution to child care costs:

____ a. Allocating the actual child care costs to each parent in proportion to their adjusted net monthly income, after the transfer of child support, the Obligor's share of child care costs is $___________ per month.

____ b. The Obligor should pay $___________ per month as additional child support, for child care costs.

____ c. An allocation of child care costs between the parents would be substantially unfair to the Obligee/Obligor because _______________________________.

____ d. It is reasonable to reserve the issue of child care costs and the allocation of this expense between the parties will be reserved until:

(1) The review hearing scheduled for ___________________________.

(2) Further motion of the Obligee or until further order of the Court or the Child Support Magistrate.

___ 45. The child(ren) has/have:

___ a. There are no known special needs or financial resources.

___ b. Special needs of ___.

___ c. Financial resources of ___.

___ 46. There has/has not been a substantial change in circumstances which renders the existing order unreasonable or unfair.

___ 47. Pursuant to Minn. Stat. §518.551, subd. 5, the Minnesota Child Support Guidelines, the Obligor's obligation should be:

___ a. $___ per month based on the Obligor's net monthly income of $___.

___ b. $___ per month based on the Obligor's ability to earn $___ per month.

___ c. Reserved/Suspended based on ___.

___ 48. The Obligor has actual physical custody of the minor child(ren). The child(ren) is/are residing in the Obligor's home and the Obligor is fulfilling his/her support obligation by providing directly for the child(ren)'s support.

___ 49. The Obligor and Obligee are residing together with their minor child(ren) and the Obligee has not received public assistance since ___.

___ 50. The ___ has provided sufficient evidence to rebut the presumptive guideline amount for child support under Minn. Stat. §518.551, subd. 5. The Child Support Magistrate has considered all of the factors required for the determination of child support under the law, and finds that a deviation from the Minnesota Child Support Guidelines is justified. The reasons for the deviation – specifically addressing the criteria set out in Minn. Stat. §518.551, subd. 5(c) and the manner in which the deviation serves the best interest of the child(ren) are as follows: ___.

___ 51. In accordance with Minn. Stat. §518.551, subd. 5(j), the Child Support Magistrate further finds that failure to deviate downward from the Minnesota Child Support Guidelines would impose an extreme hardship on the Obligor as follows: ___.

X 52. Parties agree that all payments ordered will be made by automatic income withholding in accordance with Minn. Stat. §518.6111.

X 53. The obligor signed a Payment Plan on 2-19-03 promising to pay $200.00 per month toward his child support arrears/judgments on the 1st of each month beginning 6-1-03.

___ 54. The Obligor's child support obligation shall be $___ per month, effective ___. The County of Anoka has agreed the Obligor shall pay support on a temporarily and conditionally reduced basis as follows: ___ OR

Obligor shall pay $__________ per month as long as he/she is fully participating in the Minnesota Parents' Fair Share Program, effective ____________________. If these conditions are not met, support obligations will immediately reinstate at $__________ per month without further notice or hearing.

**Based on the foregoing Findings of Fact, the Child Support Magistrate hereby makes the following Conclusions of Law, and Order:**

## CONCLUSIONS OF LAW

X 1. The Child Support Magistrate has jurisdiction in this matter pursuant to Minn. Stat. §518.551, and Rule 367.03 of the Expedited Child Support Process Rules (2001).

__ 2. That the minor child(ren) has/have a need for support, and that the Obligor has a duty to support the child(ren).

__ 3. The State, by its Agent, County of Anoka is entitled to judgment against the Obligor in the amount of $__________ for child support/medical support/child care contribution arrears which accrued from ________________________ to ________________________.

__ 4. The Obligee is entitled to judgment against the Obligor in the amount of $__________ for child support/medical support/child care contribution arrears which accrued from ____________ to ____________________.

__ 5. There has been a substantial change in circumstances which renders the existing order unreasonable or unfair.

__ 6. The Obligor has failed to show that there has been a substantial change in circumstances which renders the existing order unreasonable or unfair.

__ 7. Setting child support in a specific dollar amount promotes enforcement and collection of child support.

__ 8. The Job Training Center, Minnesota Parents' Fair Share Program is a reasonable method of assisting the Obligor in complying with the Court's Order.

__ 9. The Obligor is fulfilling his/her child support obligation by providing directly for the child(ren)'s support while the child(ren) is/are residing in the Obligor's home.

## ORDER

IT IS HEREBY ORDERED:

### CHILD SUPPORT/SPOUSAL MAINTENANCE

__ 1. The Obligor's/Obligee's/County of Anoka's Motion(s) to Modify Obligor's ongoing child support/spousal maintenance obligation(s) is/are, in all things, granted/denied.

__ 2. Beginning ______________________, and continuing each and every month thereafter, the Obligor shall pay/continue to pay $____________ per month as ongoing child support.

___ 3. Ongoing child support shall be reviewed nunc pro tunc/de novo to ________________.

___ 4. The Obligor shall pay child support pursuant to Minn. Stat. §518.551, Subd. 5, for ____ child(ren), or $__________ per month, whichever is greater, beginning ______________ ______________________. Payments are due on the first day of each month thereafter.

___ 5. Beginning ________________, the Obligor's ongoing child support obligation shall be temporarily reduced to $__________ per month, on the following condition(s): ____________________________________________.

If these conditions are not met, support obligations will immediately reinstate at $__________ per month without further notice or hearing.

___ 6. The issue of ongoing child support is reserved effective ____________________ until further motion of the County or the Obligee, or until further Order of the Court or the Child Support Magistrate or until the review hearing scheduled for ____________________, at which time support issues will be reviewed nunc pro tunc to ____________________.

___ 7. Effective ________________ the Obligor's obligation to pay ongoing child support is suspended while the Obligor has actual physical custody of the child(ren) and the child(ren) is/are residing with the Obligor and the Obligor is providing directly for the child(ren)'s support.

___ 8. The child support payments shall continue:

____ a. Until all children/the child covered by this Order reach(es) the age of majority as defined by Minn. Stat. §518.54, Subd. 2, or is/are adopted, deceased, or until further Order of the Court or the Child Support Magistrate.

____ b. ____________________________________________
____________________________________________.

___ 9. Beginning ____________________, and continuing each and every month for ______ months, the Obligor shall pay/continue to pay $__________ per month as spousal maintenance.

___ 10. If public assistance is once again expended on behalf of the minor child(ren), or if the obligee applies for non-public assistance services from Anoka County Office of Child Support, or if the child(ren) return to permanently reside with the obligee, the obligor's child support obligation shall be immediately reinstated at $________ per month.

X 11. The Anoka County Office of Child Support shall immediately notify the Commissioner of Public Safety that the obligor's driver's license may be reinstated because he has signed a valid Payment Plan.

**MEDICAL SUPPORT**

___ 12. The Obligor shall:

____ a. Obtain and/or maintain medical and dental insurance for the minor child(ren) available on a group basis or through his/her employer or union.

____ b. Pay $__________ per month to the Obligee as reimbursement for the cost of medical and dental insurance for the minor child(ren), commencing ______________ ____________________________.

____ c. Purchase a child(ren) only medical and dental insurance plan available on the open market which is a number 2 qualified plan or better. The Obligor shall provide written evidence of coverage to the Anoka County Office of Child Support, 2100

Third Avenue, Anoka, Minnesota 55303-2265, within 30 days of entry of this Order.

(1) If the Obligor fails to provide evidence of coverage within 30 days or the coverage terminates, the Obligor will pay, through automatic income withholding, an additional $__________ per month for medical support of the minor child(ren).

(2) If the Obligor fails to provide evidence of coverage within 30 days or the coverage terminates, the Obligor shall purchase the coverage available through his/her employer and/or union.

___ d. Pay $__________ per month as medical support for the minor child(ren).

___ e. The Obligor shall pay ______%, currently $__________ per month, and the Obligee shall pay ______%, currently $__________ per month, towards the medical and dental insurance expense for the minor child(ren).

___ f. The Obligor shall be liable for ______% and the Obligee shall be liable for ____ % of the minor child(ren)'s unreimbursed medical and dental expenses.

To secure reimbursement of unreimbursed medical and dental expenses, the Obligee must provide the Obligor with written verification of these expenses on a regular basis and must accompany this verification with a written request for payment of a specific dollar amount. The Obligor will reimburse the Obligee for his/her share of the unreimbursed medical and dental expenses within 30 days of receipt of verification of the amounts owed.

___ 13. The Obligee shall:

___ a. Obtain or maintain medical and dental insurance for the minor child(ren) available on a group basis or through his/her employer or union.

___ b. Purchase a child(ren) only medical and dental insurance plan available on the open market which is a number 2 qualified plan or better. If the Obligee provides evidence of insurance to the Anoka County Office of Child Support, 2100 Third Avenue, Anoka, Minnesota, 55303, within 30 days of entry of this Order, the Obligor shall pay, through automatic income withholding, an additional $__________ per month towards the cost of medical insurance for the minor child(ren).

___ c. Be liable for ______% of the unreimbursed medical and dental expenses of the minor child(ren).

To secure reimbursement of unreimbursed medical and dental expenses, the Obligee must provide the Obligor with written verification of these expenses on a regular basis and must accompany this verification with a written request for payment of a specific dollar amount. The Obligor will reimburse the Obligee for his/her share of the unreimbursed medical and dental expenses within 30 days of receipt of verification of the amounts owed.

___ 14. The issue of medical support is reserved until:

___ a. The review hearing scheduled for ______________________________.

___ b. Further motion of the Obligee or County or until further order of the Court or the Child Support Magistrate.

___ 15. The issue of liability of unreimbursed medical and dental costs is reserved until:

___ a. The review hearing scheduled for ______________________________.

___ b. Further motion of the Obligee or County or until further order of the Court or the Child Support Magistrate.

X 16. The Payment Plan signed by the obligor on 2-19-03 is hereby incorporated into and made part of this order.

## CHILD CARE COSTS

__ 17. The Obligor shall pay ______%, currently $__________ per month, as partial reimbursement for net work and/or education related child care costs, commencing __________________.

__ 18. The issue of child care costs and the allocation of these expenses between the parents shall be reserved until:
- ___ a. The review hearing scheduled for ______________________________.
- ___ b. Further motion of the Obligee or County or until further order of the Court or the Child Support Magistrate.

## JUDGMENT

__ 19. The County's/Obligee's motion for judgment is denied.

__ 20. Judgment shall be entered against the Obligor in favor of the State, by its Agent, County of Anoka in the amount of $__________, which amount represents child support/medical support/child care contribution arrears that accrued during the time period from __________ __________________ to ______________________________.

__ 21. Judgment shall be entered against the Obligor in favor of the Obligee in the amount of $__________, which amount represents child support/medical support/child care contribution arrears that accrued during the time period from ______________________________ to ______________________________.

__ 22. Entry of the judgment in favor of ______________________________ shall be stayed on the condition that the Obligor pay to Anoka County Office of Child Support the sum of $__________. If said payment is not made, upon submission to the Court of an Affidavit by Anoka County Social Services, stating the sums paid and the amount which has not been paid, the Court Administrator shall enter judgment as stated above in paragraph #______, minus any sums paid.

__ 23. Beginning ______________________, the Obligor shall pay $__________ per month, which is 20% of the ongoing child support obligation, to be applied to the reduction of child support and/or maintenance arrears, or judgments therefore, until paid.

__ 24. The Obligee's right to past support from __________________ to __________________ is hereby WAIVED and/or ARREARS TOTALING $__________.

__ 25. ____________________________________________________________ ____________________________________________________________.

## OTHER PROVISIONS

__ 26. The County's motion to reduce child support arrears, which accrued during the time period ______________________ through ______________________ to judgment is hereby

continued to ______________________. The Obligor is hereby ordered to bring copies of his W2s and tax return(s) for the year(s) ______________________ with him/her to that hearing.

___ 27. The Obligor shall report monthly in writing, to the Anoka County Office of Child Support, at Anoka County Government Center, 2100 Third Avenue, Anoka, Minnesota 55303-2265 about his/her employment and any changes in residence address. These monthly written reports shall include:

___ a. The names and addresses of all employers, the income earned from each employer, the hourly wage rate and number of hours worked per week;

___ b. An outline of the Obligor's job search efforts, including a minimum of _____ job contacts per week,, the name and address of the business and person contacted, the job applied for, the rate of pay for that job, the date of the contract, and the outcome.

___ 28. The Obligor is ordered to appear for a review hearing on ______________________ at ______________ a.m./p.m. at the Anoka County Courthouse, Anoka, Minnesota, for the purpose of ______________________________________________.
The Obligor is ordered to bring: ______________________________________.

___ 29. Service of a copy of this order shall be made upon the Obligor by first class U.S. mail at the Obligor's last known address as listed above.

___ 30. Service of a copy of this order shall be made upon the Obligor's attorney by first class U.S. mail at:

______________________________________
______________________________________
______________________________________

___ 31. A copy of this order shall be sent to the Obligee by first class U.S. mail at the Obligee's last known address as listed above.

___ 32. Service of a copy of this order shall be made upon the Obligee's attorney by first class U.S. mail at:

______________________________________
______________________________________
______________________________________

_X_ 33. In accordance with Minn. Stat. §518.68, the Obligor shall notify the Obligee and the County Child Support Office of a change of address or residence within ten (10) days of the change. Any subsequent actions brought or notices sent in this case for which personal service is not required may be sent to the address given for the Obligor in the Findings of Fact, or to the most recent address provided by the Obligor to the County.

_X_ 34. The Obligor shall notify the County Office of Child Support of any change in his/her employment and health insurance status within ten (10) days of the change. The Obligor shall keep the County Office of Child Support informed of the name and address of his/her current employer or payor of funds and whether he/she has access to employment-related health insurance and the policy information for the available insurance.

X 35. All payments ordered herein shall be immediately withheld by the Obligor's present and future employer(s) or other payor(s) of funds pursuant to Minn. Stat. §518.6111.

X 36. All payments ordered herein shall be sent to:

**MINNESOTA CHILD SUPPORT PAYMENT CENTER**
**P.O. BOX 64326**
**ST. PAUL, MINNESOTA 55164**

X 37. If child support payments are not paid when due, the Obligor's employer or payor of funds shall withhold from the Obligor's income, an additional amount of 20% of the monthly child support until the arrearage(s) are paid.

X 38. In accordance with Minn. Stat. §518.585, the Obligor is placed on notice that whenever the unpaid child support amount due is greater than the current child support due, interest on the past due amount accrues at the annual rate provided in Minn. Stat. §549.09, subd. 1 plus 2% not to exceed an annual rate of 18%.

X 39. The Obligor is placed on notice that in accordance with Minn. Stat. §518.551, subd. 12, if (s)he is licensed by an occupational licensing board, and if (s)he is in arrears in court-ordered child support payments, the Child Support Magistrate may direct the licensing board to conduct a hearing concerning suspension of the Obligor's license.

X 40. The Obligor is placed on notice that in accordance with Minn. Stat. §518.551, subd. 13, if (S)HE has been or may be issued a driver's license by the Commissioner of Public Safety, and (S)HE is in arrears in court-ordered child support in an amount equal to or greater than three times the Obligor's total monthly support payments and not in compliance with a written payment agreement regarding current support and arrearages, the public authority may set a hearing concerning the suspension of the Obligor's driver's license.

X 41. The provisions of all orders currently in effect continue unless modified by this order.

X 42. No provision herein shall be deemed to restrict in any way the right of any person or political subdivision to collect arrearage pursuant to the Revenue Recapture Act for the State of Minnesota and any other similar State or Federal law.

X 43. This order does not modify orders or decrees entered in distinct and separate court files from other Minnesota counties or from another state.

X 44. **THE ATTACHED APPENDIX IS INCORPORATED AND MADE A PART OF THE ORDER OR JUDGMENT.** The Appendix contains provisions regarding Income Withholding, Minn. Stat. §518.6111; Cost-of-Living Adjustments, Minn. Stat. §518.641; Judgments by Operation of Law and Docketing of Judgments, Minn. Stat. §548.091; Notice of Address or Residence Change, Minn. Stat. §518.55, subdivision 3; Attorney fees and Collection costs, Minn. Stat. §518.14; Family Court Rule 303.06 Subdivision a; Parental Rights, Minn. Stat. § 518.177 and 609.26; Rights to Access and Information, Minn. Stat. 518.17, subdivision 3. The Parental Rights and Rights to Access and Information provisions in the appendix do not apply to this order.

X 45. The Anoka County Attorney is discharged as the attorney of record, except for the following purposes: Receipt of service and service of this order and notice of entry of the order and

judgment; receipt of service and service of notice of appeal of this order or judgment entered in accordance with this order; service of a motion for a new trial made pursuant to Rule 59 of the Minnesota Rules of Civil Procedure.

___ 46. ______________________________

* * * *

LET JUDGMENT BE ENTERED FORTHWITH
IT IS SO ORDERED.

Dated: 2-25-03

Jill Rohwer
Child Support Magistrate

APPROVED AS TO FORM

ROBERT M.A. JOHNSON
ANOKA COUNTY ATTORNEY

Kay M. Gurenda

Assistant Anoka County Attorney
Attorney for the Public Authority
Anoka County Government Center
2100 Third Avenue, 7th Floor
Anoka MN 55303-2265
Telephone: (763) 323-5558
Attorney License No. 164094

**OBLIGEE STATEMENT**

The obligee, says that:

X I am the Obligee in the foregoing action, and I have reviewed and approved the Findings and Order.

X I understand that the County Child Support Agency, the County Attorney's Office, and other employees of the County do not represent me and cannot give me legal advice.

X I know I have the right to be represented by a lawyer of my choice.

X I hereby expressly waive my right to be represented by a lawyer of my choice, and I freely and voluntarily sign this agreement.

X I agree to the entry of this Order and Judgment.

Date: 2/19/03

Date: __________

Betty Jean Lindemoen
Betty Jean Lindemoen OBLIGEE

ATTORNEY FOR THE OBLIGEE (signature)

ATTORNEY FOR THE OBLIGEE (print name)

Attorney's Address (print address)

Attorney License Number (print license #)

**OBLIGOR STATEMENT**

The Obligor, says that:

✓ I am the Obligor in the foregoing action, and I have reviewed and approved the Findings and Order.

✓ I understand that the County Child Support Agency, the County Attorney's Office, and other employees of the County do not represent me and cannot give me legal advice.

✓ I know I have the right to be represented by a lawyer of my choice.

✓ I hereby expressly waive my right to be represented by a lawyer of my choice, and I freely and voluntarily sign this agreement.

✓ I have been advised that if I willfully fail to comply with the terms of this Order, I may be found in contempt of Court.

✓ I agree to the entry of this Order and Judgment.

Date: 2-19-03

Date: __________

[signature]
OBLIGOR

ATTORNEY FOR THE OBLIGOR (signature)

ATTORNEY FOR THE OBLIGOR (print name)

Attorney's Address (print address)

Attorney License Number (print license #)

**COUNTY STATEMENT**

The foregoing Findings of Fact, Conclusions of Law and Order are hereby approved.

Date: 2-19-03

Kay M Gavinski
Kay M. Gavinski
Assistant Anoka County Attorney
Attorney for the Public Authority
Attorney License No. 164094

TO: Anoka County Human Services
Office Of Child Support
2100 3rd Ave 4th Flr
Anoka, MN 55303-2264

FROM: Lance G. Milliman
Po Box 61
South Haven, MN 55382-0061

RE: 001026822501

## Payment Plan

I, Lance G. Milliman promise to pay the sum of $ 200.00 on the first of every month, starting 04/01/2003. I am making this agreement to avoid Driver's License Suspension. Payments are to be sent to:

Mn Child Support Payment Ctr
Po Box 64326
St Paul, Mn 55164

If I fail to make any payment on the date due, Anoka County Human Services has the legal authority to proceed with the above action.

Signing this agreement does not prevent Anoka County Human Services or obligee from using other methods to collect my past due child support.

My current or future employer or payor of funds may deduct these payments from my income.

This agreement does not change my current child support obligation or modify any court orders regarding my support obligation.

I understand that if I pay less than my current monthly child support obligation, what I haven't paid will be added to my debt.

This agreement does not forgive any debt or interest that was previously added to this case.

This agreement will remain in effect until further order of the court.

I have read and understand this agreement and agree to comply with its terms.

| SIGNATURE OF Lance G. Milliman | DATE |
| --- | --- |
| Lance G Mill | 2-19-03 |

Doc ID: 003CT0720009338 (FMIN0001 F0701.004)

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

Darryl R. Petschen, Civ. File No. 3-96-115

Plaintiff,

v. **MEMORANDUM AND ORDER**

Governor of State of Minnesota,

Defendant.

---

This matter is before the Court upon the Governor of the State of Minnesota's (the State's) Motion to Dismiss the Complaint of Plaintiff Darryl R. Petschen with prejudice. For the following reasons the Court grants the State's motion.

**BACKGROUND**

In 1995 the State of Minnesota amended section 518 of the Minnesota Statutes, the maintenance, support and property portion of its marriage dissolution statute. Particularly concerning the issue before the Court today, the State added subdivision 13 to § 518.551. This addition authorizes a court to order the State's commissioner of public safety to suspend a person's driver's license if the person is in arrears in court-ordered child support or maintenance payments for an amount equal to three-months payments, and establishes an administrative regimen which must be followed before the suspension may take effect. Minn. Stat. § 518.551, subd. 13(a). The amendment took effect January 1, 1996.

[redacted]

FILED APR 26 1996
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. APR 26 1996
DEPUTY CLERK

On January 26, 1996, Darryl R. Petschen, who possesses a commercial driver's license and who is an interstate truck driver, received notice from the Ramsey County Attorney that her office would seek suspension of his driver's license under the new law if he failed either to submit a payment plan, to notify the county attorney of a pending bankruptcy action, or to request a hearing to contest the suspension. Instead of complying with either of these options, Petschen filed this action about two weeks after receiving the notice.

The Court must construe a *pro se* pleading liberally, Young v. Armontrout, 795 F.2d 55, 56 (8th Cir. 1986). So read, Petschen's *pro se* Complaint charges that Minn. Stat. § 518.551, subd. 13 violates his rights of due process and equal protection of the law under the United States Constitution, and also violates the Commerce Clause. Additionally, Petschen asserts that the law is unconstitutional because the executive branch enforces it, and is invalid because federal law preempts it. The State moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

**DISCUSSION**

For the purposes of the Defendant's Motion to Dismiss, the Court takes all facts alleged in Plaintiff's Complaint as true. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to the Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it

appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court applies those standards in this discussion.

The facts as stated above are not in dispute. The ultimate issue presented is whether Minn. Stat. § 518.551, subd. 13 passes constitutional muster as applied to Mr. Petschen. The Court holds that it does. Petschen's preemption argument similarly fails.

## I. Separation of Powers

The Court begins with Mr. Petschen's contention that § 518.551, subd. 13 violates the "separation of powers" by improperly vesting enforcement authority in the executive branch. The State correctly notes that the only logical construction of this charge is that it alleges the suspension law violates the separation of powers of the State, not federal government, since it is the State which enforces this State statute. However, the Eleventh Amendment to the United States Constitution generally bars federal courts from enjoining state officers from violating state law. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89 (1984). And although the Complaint in this case at least captions the Governor as the nominal Defendant, the action is in substance a suit against the State. Thus the claim that the State's law violates the Minnesota Constitution because the State's executive arm enforces it is not actionable in this Court. See Pennhurst, 465 U.S. at 101-102 (reaffirming that despite bringing a suit nominally against an officer, if the claim is substantively against the state it is barred in federal court whether it seeks damages or injunctive relief); Harmon v. Auger,

768 F.2d 270, 275 (8th Cir. 1985) (applying Pennhurst and reversing the magistrate's holding that certain Iowa prison visitation rules violated the Iowa Administrative Procedure Act). Therefore this Court may not consider whether enforcement of Minn. Stat. § 518.551, subd. 13 violates the separation-of-powers doctrine of the Minnesota Constitution.

**II. Commerce Clause**

The Constitution vests in Congress the authority "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. While the text of the Commerce Clause does not itself expressly restrain states from impinging interstate commerce, the Supreme Court has interpreted this congressional authority also to limit state interstate commerce regulation. Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon, 114 S.Ct. 1345 (1994); Welton v. Missouri, 91 U.S. 275 (1876). Over the years the Court has developed a standard to determine when a state has violated this negative application of the Commerce Clause — known now as the "dormant commerce clause" — and has summarized the standard:

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues,

> but more frequently it has spoken in terms of "direct" and "indirect" effects and burdens.

Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). This standard has further developed into a two-step analysis. At step one the question is whether the challenged state regulation is a protectionist measure, discriminating against out-of-state articles. This discrimination may appear in one of three forms. The regulation is discriminatory if it (1) is facially discriminatory against out-of-state articles; (2) is facially neutral but has a discriminatory purpose; or (3) is facially neutral but has a discriminatory effect. At step two, the reviewing court must apply the proper level of scrutiny: very strict scrutiny where discrimination is found, and the more lenient Pike balancing test if no discrimination exists. A finding of discrimination, therefore, generally would require invalidation of the state regulation *per se*. See SDDS, Inc. v. South Dakota, 47 F.3d 263, 267-68 (8th Cir. 1995).

On its face Minn. Stat. § 518.551, subd. 13 does not discriminate against out-of-state drivers. By its terms the statute subjects all persons having Minnesota drivers' licenses who fail in their obligation to pay court-ordered child support to possible license suspension. The statute on its face does not threaten out-of-state drivers any more than in-state drivers. Mr. Petschen makes no argument and provides no evidence that the statute is driven by some discriminatory purpose; nor does he argue the statute is effectively discriminatory. The Court concludes that Minn. Stat. § 518.551, subd. 13 does not discriminate against out-of-state drivers.

Because the Court finds § 518.551, subd. 13 to be nondiscriminatory, it must apply a balancing test to determine whether the statute breaches the dormant commerce clause. The question then is whether the statute accomplishes some legitimate local interest with only incidental effects on interstate commerce and whether the burden on commerce is not clearly excessive in relation to the legitimate local interest. Pike, 397 U.S. at 142; Waste Systems Corp. v. County of Martin, Minnesota, 985 F.2d 1381, 1386 (8th Cir. 1993).

The State contends that the statute's purpose is to encourage non-custodial parents to pay their child support arrearages, and argues that this is a legitimate state interest. The Court agrees. Section 518.551(f) requires the Minnesota Commissioner of Human Services to report to the State Legislature the amount collected in child support payments from obligors who have been notified of the intended suspension of their drivers' licenses. That the statute's purpose is to collect child support from those who have become derelict in their financial obligation to their own children is self evident. The end result of increased child support payments, argues the State, leads to a reduction in child poverty and welfare dependency. The State has a legitimate interest in promoting the welfare of children, Henne v. Wright, 904 F.2d 1208, 1215 (8th Cir. 1990), *cert. denied*, 498 U.S. 1032 (1991), and also in preserving the fiscal integrity of its welfare programs. Association of Residential Resources in Minnesota, Inc. v. Gomez, 51 F.3d 137, 141 (8th Cir. 1995). Enhanced collection of child support as facilitated by the threat of loss of the obligor's driver's license is rationally related to and advances these legitimate governmental interests.

The next question is whether any effect on interstate commerce by enforcement of § 518.551, subd. 13 is merely incidental. It is. The statute works to place in jeopardy the driving privileges of anyone who breaches his or her duty to provide for his or her own children. That some who default on their obligation may happen to rely on their licenses to travel interstate for commercial purposes, such as Mr. Petschen, is only incidental to the risk all delinquent parents generally must endure.

The final consideration is whether the burden on commerce is excessive in relation to the legitimate local interest. Petschen offers no indication that the burden on interstate commerce will be anything but negligible, and does not counter the State's argument that the statute would burden only "a few persons who may otherwise drive from state to state." Petschen fails to show that the effect on interstate commerce is "clearly excessive" in relation to the State's legitimate interest to obtain child support from those who have been ordered to provide it but who have failed to comply. For these reasons the Court holds that Minn. Stat. § 518.551, subd. 13(a) does not violate the dormant commerce clause.

## III. Due Process

The Fourteenth Amendment prohibits states from depriving a person of life, liberty or property without due process of law. Mr. Petschen does not clearly articulate whether his due process challenge to § 518.511 is founded upon a procedural or substantive due process theory. Under either analysis, however, his claim cannot survive the State's Motion to Dismiss.

### 1. Procedural Due Process

To defeat the State's Motion to Dismiss his procedural due process claim, Petschen must have a constitutionally protected property or liberty interest in the driver's license at risk of suspension, the State's enforcement of the suspension statute must deprive him of that interest, and the State's scheme must do so without affording him due process of law.

The Court first considers whether Petschen has a constitutionally protected property interest in the driver's license. In a due process analysis,

> [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Sutton v. U.S. Dept. of Housing and Urban Development, 885 F.2d 471, 473 (8th Cir. 1989), *cert. denied*, 493 U.S. 1075 (1990). Looking to Minnesota law, it is clear a person has a property interest in a driver's license. Davis v. Commissioner of Public Safety, 509 N.W.2d. 380, 388 (Minn. Ct. App. 1993) ("A driver's license is an important property interest subject to due process protection."), *aff'd*, 517 N.W.2d 901 (Minn. 1994).

The State clearly seeks to deprive Petschen of this property interest by suspending his driver's license. However, equally clearly, the suspension statute affords Petschen with substantial process. Only persons already subject to and in violation of a court order to provide child support or maintenance payments are subject to the statute. Minn. Stat.

§ 518.551, subd. 13(a). The statute is not triggered until the obligee first moves for suspension and the obligor has been properly served the motion. Id. The obligor has a right to a hearing to contest the suspension, or to avoid suspension by reaching a payment agreement. Id. If the hearing is before an administrative law judge, the obligor is afforded the full assortment of rights provided for contested administrative hearings in Minnesota. Minn. Stat. § 518.5511(e). Whether the hearing is before an administrative law judge or a State district court, the obligor may appeal a decision to suspend to the Court of Appeals of Minnesota. Minn. Stat. § 518.5511, subd. 4(h). The process by which Mr. Petschen's license is now subject to suspension easily satisfies procedural due process.

2. **Substantive Due Process**

Substantive due process protects persons from government action not rationally related to a legitimate government interest, and from government action regulating a fundamental right where that action is neither necessary nor narrowly tailored to further a compelling government interest. See Chesterfield Development Corp., v. City of Chesterfield, 963 F.2d 1102 (8th Cir. 1992).

Because Petschen has no constitutional fundamental right to a Minnesota driver's license, the Court will apply the rational relationship test. The Court holds the State's decision to begin suspension proceedings against Petschen is rationally related to a legitimate government interest. As discussed above, collection of child support as facilitated by the threat of loss of a driver's license is rationally related to and advances the legitimate

governmental interest in promoting the welfare of children and in preserving the fiscal integrity of the State's welfare programs.

As a truck driver, Mr. Petschen needs his commercial driver's license to continue to operate in Minnesota. Arguably, a commercial driver may be less able to make child support payments in a timely fashion once his driver's license has been suspended. And as Mr. Petschen argues, failure to pay child support is not directly related to possessing a commercial driver's license. However, the issue of the wisdom to enforce § 518.551 in this circumstance is not an issue for the Court; the question is simply whether the State is authorized to enforce the statute, and it is. In any event, while suspension of his license may make it less likely that Mr. Petschen himself will be financially able to pay child support, it is quite plausible this suspension and those like it may deter others from ignoring their substantial and necessary financial duty to their children. Suspension of Petschen's driver's license under § 518.551 does not violate substantive due process. See Myers v. Scott County, 868 F.2d 1017, 1019 (8th Cir. 1989) ("the theory of substantive due process is properly reserved for truly egregious and extraordinary cases . . . .").

**IV. Equal Protection**

Mr. Petschen also contends that the suspension statute violates his right to equal protection under the law. He argues first that the statute affects only citizens of Ramsey County, Minnesota, and therefore is unequal as to Minnesota citizens of other counties. One wonders how this argument developed, since all documents submitted by Mr. Petschen in

this matter establish that he resides in Isanti, Minnesota, which is of course not located in Ramsey County. Moreover, the statute applies to everyone within the State's jurisdiction, in whichever county he or she may reside. Petschen's argument lacks merit.

Petschen also argues that "out-of-state welfare recipient's [sic] husbands cannot have their license [sic] suspended," and therefore the statute violates equal protection. The terms of the statute do not limit its application to Minnesota citizens; it applies to any person, without regard to his or her state of residence, who has or is seeking a Minnesota driver's license and who is in three months arrears in court-ordered child support payments. If Mr. Petschen's argument had merit, then similarly violative of equal protection would be all state laws that have as a penalty the suspension of some license issued by that particular state. But such is clearly not the law. Petschen fails to state a claim of a violation of equal protection.

## V. Preemption

Finally, Mr. Petschen asserts that the State issued a commercial driver's license to him "as mandated [by] The Commercial Motor Vehicle Safety Act of 1986," and therefore the State cannot suspend his license. This argument fails.

Principally, under the Supremacy Clause, state laws regulating conduct in an area preempted by federal law are invalid. "[T]he Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The only question is congressional intent; if Congress intended a particular federal enactment to preempt state law, then it does.

California Federal Savings & Loan Association v. Guerra, 479 U.S. 272, 280 (1987) ("In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress.").

When considering whether Congress intended to preempt state law in a particular area, the Court begins with the presumption against preemption. Maryland v. Louisiana, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); Boyle v. Anderson, 68 F.3d 1093, 1099 (8th Cir. 1995), *cert. denied*, 116 S.Ct. 1266 (1996). This presumption is overcome and congressional intent to preempt state law is established in one of three ways: (1) Congress expressly states that the federal law is to preempt state law; (2) congressional intent to preempt state law is inferred where the federal regulatory scheme is so comprehensive that there is no room for supplementary state regulation; or (3) there is a conflict between federal and state regulation such that compliance with both is impossible. See California Federal Savings & Loan Association, 479 U.S. at 280-81.

The Commercial Motor Vehicle Safety Act of 1986 satisfies none of these tests. The Act is codified at 49 U.S.C. §§ 31301 - 31317. First, there is no express statement in the Act that Congress intended the Act to preempt state law. Second, by its terms the Act is not so comprehensive that it leaves no room for supplementary state regulation of commercial drivers' licenses. Indeed, the Act expressly provides the *minimum* standards for testing and

fitness of commercial drivers, § 31305(a), a mechanism to establish the *minimum* list of controlled substances for which drivers may be tested, § 31306(c)(2)(B), a mechanism to establish the *minimum* training requirements for operators of longer combination vehicles, § 31307(b), and a mechanism to establish the *minimum* standards for issuance of commercial drivers' licenses by states. § 31308. The inference from the Act is that Congress intended to impose certain minimum requirements for commercial operators, but did not intend to supplant state law where state law imposes a higher standard, or additional requirements, for the issuance or maintenance of commercial drivers' licenses.

Finally, the Act does not conflict with Minn. Stat. § 518.551, subd. 13(a); compliance with the federal statute does not render it impossible to comply with the State's statute, and compliance with the State's statute does not render it impossible to comply with the federal statute. Nowhere does the Act prohibit a state from suspending the commercial driver's license of a person who is derelict in his duty to financially provide for his children. The Commercial Motor Vehicle Safety Act of 1986 neither expressly nor impliedly preempts Minn. Stat. § 518.551, subd. 13(a).

## CONCLUSION

The Eleventh Amendment bars this Court from considering whether the State's suspension law violates the separation-of-powers doctrine of the Minnesota Constitution. The suspension law does not violate the dormant commerce clause. The process by which Mr. Petschen's license is now subject to suspension satisfies procedural due process and the

law does not violate his substantive due process rights. Petschen fails to state a claim of a violation of equal protection. Finally, the Commercial Motor Vehicle Safety Act of 1986 neither expressly nor impliedly preempts Minn. Stat. § 518.551, subd. 13(a). Thus, Petschen's Complaint, liberally read, fails to state a claim upon which relief can be granted.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. The State's Motion to Dismiss (Clerk Doc. No. 3) is GRANTED; and
2. The Darryl R. Petschen's Complaint is DISMISSED WITH PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: April 26, 1996.

Paul A. Magnuson
United States District Court Judge

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 97-3006MN

---

| | | |
|---|---|---|
| Kenneth J. Huls, Appellant, | * | |
| v. | * | Appeal from the United States District Court for the District of Minnesota. |
| Don Davis, Acting Commissioner of Public Safety of the State of Minnesota, Appellee. | * | [UNPUBLISHED] |

---

Submitted: February 11, 1998
Filed: February 11, 1998

---

Before FAGG, JOHN R. GIBSON, and MURPHY, Circuit Judges.

---

PER CURIAM.

Kenneth J. Huls appeals the district court's grant of summary judgment in Huls's action attacking the constitutionality of a state rule that requires six years of documented alcohol abstinence before a motorist involved in three alcoholic-related traffic violations is eligible for reinstatement of driving privileges. Having reviewed the record and the parties' submissions, we conclude that Huls has failed to show a protected property interest or a violation of his constitutional rights. We affirm the district court. See 8th Cir. R. 47B.

Huls's motion for an expedited decision is granted.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Kenneth J. Huls,

Plaintiff,

v.

Civil No. 97-347 (ADM/JGL)
**MEMORANDUM OPINION AND ORDER**

Don Davis, Acting Commissioner of Public Safety of the State of Minnesota,

Defendant.

---

Charles M. Schiff, Esq., and Christopher A. LaNave, Esq., St. Cloud, Minnesota, for Plaintiff.

Joel A. Watne, Esq., Assistant Attorney General, Minnesota Attorney General's Office, St. Paul, Minnesota, for Defendant.

---

## Introduction

On February 21, 1997, Plaintiff commenced the instant action against Don Davis, the Acting Commissioner of Public Safety for the State of Minnesota ("the Commissioner"), alleging that Minn. Rule 7503.1700, subp. 5(C), which requires a six-year period of documented abstinence prior to the issuance of a restricted driver's license to an individual who has previously completed rehabilitation twice, is unconstitutional. Plaintiff seeks a declaration that the Rule is unconstitutional on its face and as applied to him. He also seeks an injunction prohibiting the Commissioner from applying the rule to him. This matter is currently before the Court on Plaintiff's motion for summary judgment and the Commissioner's motion to dismiss and/or for summary judgment. For

JUN 1 9 199?
JUN
DEPUTY CLERK

the reasons set forth below, Plaintiff's motion will be denied and the Commissioner's motion for summary judgment will be granted.

**Background**

Plaintiff resides in Avon, Minnesota, which is approximately 15 miles from St. Cloud, Minnesota. Plaintiff is employed full time with Burlington Northern Railroad in St. Cloud. As part of his job duties, Plaintiff is required to fix disabled cars at the location the cars become disabled. Plaintiff and his work partner travel to the disabled cars in a Burlington Northern truck. Plaintiff's partner drives the truck when he is working. However, when his partner is on vacation, sick leave or is otherwise unable to drive (approximately forty-five days a year), Plaintiff is required to drive. If Plaintiff is unable to drive, he risks losing his job.

Plaintiff's driving privileges were initially revoked under Minn. Stat. §§ 169.121 and 123 because of alcohol-related incidents occurring on October 9, 1983, November 22, 1983 and June 23, 1984. As a result of having three alcohol-related incidents within five years, Plaintiff's driving privileges were canceled and denied as inimical to public safety until such time as he demonstrated his rehabilitation in accordance with standards set by the Commissioner. To be considered rehabilitated, Plaintiff, *inter alia*, had to successfully complete an alcohol abuse treatment program and had to have a minimum of one-year of verified total abstinence. Plaintiff met those requirements on August 29, 1986 and his driving privileges were reinstated with the restriction that he remain

abstinent for as long as he wished to remain licensed to drive in Minnesota.

Subsequently, the Commissioner received trustworthy information regarding Plaintiff's continued use of alcohol, which resulted in the cancellation and renewed denial of Plaintiff's driving privileges as inimical to public safety on March 11, 1987. To be considered rehabilitated for a second time, Plaintiff had to demonstrate successful completion of an alcohol abuse treatment program and had to have a minimum of three years of verified total abstinence.

While his license was canceled, Plaintiff received convictions for driving while under the influence of alcohol for violations committed July 26, 1987 and April 23, 1988.

After Plaintiff completed the requirements for his second rehabilitation, his driving privileges were reinstated on May 23, 1991, again with the restriction that he remain totally abstinent.

On November 2, 1994, Plaintiff was involved in a car accident when he was under the influence of alcohol. He was subsequently convicted yet again for driving while under the influence. On January 23, 1995, Plaintiff's driving privileges were again canceled and denied as inimical to public safety until he completes the requirements for a third rehabilitation.

To be considered rehabilitated for a third time, Plaintiff has to:

A. successfully complete treatment for chemical dependency following the last documented date of the use of alcohol or controlled substance and submit evidence of chemical

dependency treatment to the commissioner;

B. participate in a generally recognized, ongoing abstinence-based support group and submit evidence of attendance to the commissioner showing regular participation for a minimum of three months immediately before submission;

C. abstain from the use of alcohol and the use of controlled substances, attest to the abstinence for a period prescribed in subpart 5, and furnish evidence of abstinence for the required period to the commissioner; and

D. appear for a rehabilitation interview at one of the department's driver evaluation offices.

Minn. Rule 7503.1700, subp. 2. To comply with subp. 2(C), an individual who has twice completed rehabilitation must document a six-year period of abstinence. See Minn. Rule 7503.1700, subp. 5(C). Successful completion of a third rehabilitation allows an individual to receive limited driving privileges for work purposes until documented abstinence of nine years is achieved at which time full driving privileges can be restored.

After Plaintiff's driving privileges were denied and canceled in January 1995, he petitioned the Commissioner for a limited license to drive at work when necessary. On November 13, 1996, the Commissioner denied Plaintiff's petition for a limited license.

Thereafter, on February 13, 1997, Plaintiff commenced the instant action alleging that Minn. Rule 7503.1700, subp. 5(C) is unconstitutional because there are no facts to support it; it violates his right to be free from unreasonable government action and it is unconstitutional as applied to him because he is rehabilitated. Plaintiff now moves for

summary judgment. In support of his motion, he claims he has a protectable property interest in obtaining a limited license/work permit and also a liberty interest in working in the lawful occupation of his choosing without unreasonable governmental interference. He further alleges there are no facts in the record which demonstrate that a six-year period of abstinence is reasonable. Finally, Plaintiff relies on the testimony of Dr. Emry Varhely who stated that according to the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) ("DSM4"), a person who has remained abstinent for a period of twelve months is considered to be in full sustained remission. Since he has been abstinent for more than twelve months, Plaintiff argues that it unreasonable to require him to be abstinent for a total of six years in order to obtain a limited license when the DSM4 only requires twelve months of abstinence.

The Commissioner also filed a motion to dismiss and/or for summary judgment. He argues that Plaintiff has no protectable property or liberty interest in obtaining a limited license; Minn. Rule 7503.1700, subp. 5(C) has been constitutionally applied to Plaintiff; and Minn. Rule 7503.1700, subp. 5(C) is rationally related to a legitimate governmental objective.

## Discussion

I. Standard for Summary Judgment.[1]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552-2553 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8 th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8 th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id. However,

---

1 Matters outside the pleadings were presented in support of the Commissioner's motion and not excluded by the Court. Consequently, the Commissioner's motion to dismiss was converted into a motion for summary judgment under Fed. R. Civ. P. 12(b).

"the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)(citation omitted). Moreover, a plaintiff facing a summary judgment motion cannot "get to a jury without any significant probative evidence tending to support the complaint." Rath v. Selection Research, Inc., 978 F.2d 1087, 1091 (8th Cir. 1992), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510 (1986). In addition, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

II. Substantive Due Process.

To state a substantive due process claim a plaintiff must allege: (1) a deprivation of a protected property interest, liberty interest or the infringement of some other fundamental right; and (2) that the deprivation or infringement was without a rational basis or that it was motivated by ill will or bad faith. See Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445-46 (8th Cir. 1995); Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992).

"Protected property interests are created by state law. . . but federal constitutional law determines whether the interest created by state law rises to the level of a protected property interest." Dover Elevator Co., 64 F.3d at 446 (citing Board of Regents of State

Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim or entitlement to it." Board of Regents of State Colleges, 408 U.S. at 577, 92 S.Ct. at 2708; see also Moyers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 718 (8th Cir. 1995)(to show a property interest in the renewal of a license requires plaintiff to have a legitimate claim of entitlement to it).

> While this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness. . . .

Board of Regents of State Colleges, 408 U.S. at 572, 92 S.Ct. at 2706. A state creates a protected liberty interest by placing substantive limitations on official discretion. Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747 (1983). An individual claiming a protected interest must have a legitimate claim of entitlement to it, not merely an abstract desire or unilateral hope for it. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459, 109 S.Ct. 1904, 1908 (1989).

In this case, Plaintiff claims he has a protected property right in obtaining a limited driver's license. However, he has not achieved the necessary six years of abstinence

required by Minn. Rule 7503.1700, subp. 5(C) and thus he has no legitimate claim of entitlement to such a license.

In addition, he claims that the Commissioner's refusal to grant him a limited license amounts to unreasonable governmental interference with his right to pursue a lawful occupation. Plaintiff's claim is without merit. Under the applicable rules, Plaintiff is unable to obtain a limited license until he achieves six years of abstinence. While the enforcement of this rule might have a tangential impact on Plaintiff's employment, his argument does not differ from that which could be made by any prisoner whose incarceration impacts his or her ability to pursue a lawful occupation. Plaintiff's liberty interest in pursuing an occupation does not relieve him of the burdens caused by his own actions. Thus, he has no protectable property or liberty interest and his claim must fail.[2]

Even if Plaintiff could demonstrate a protected interest, his claim would fail because Minn. Rule 7503.1700, subp. 5(C) is rationally related to a legitimate governmental interest. In the statement of need and reasonableness ("Statement") filed in conjunction with the initial rulemaking proceedings in 1985, the Department of Public Safety set forth numerous reasons justifying the relevant rules, including Minn. Rule

---

[2] This case is distinguishable from Mackey v. Montrym,, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617 (1979) and Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589 (1971) where the Supreme Court determined that the Due Process clause applies to the suspension or revocation of a driver's license. Here, Plaintiff does not challenge the January 23, 1995 cancellation and denial of his driving privileges. Instead, he seeks to reobtain limited driving privileges. Thus, Mackey and Bell are inapposite.

7503.1700, subp. 5(C). First, the Statement established that the rules "are designed to be sensitive to both the public interest in removing intoxicated drivers from our roadways, and to the private interests of the driver involved in the licensing action." See Watne Aff., Ex. I, p. 4. The Statement also provides that, "[t]he rules impose the greatest legal sanctions on those individuals causing the greatest degree and risk of harm to the public. Thus, the licensing restrictions imposed on multiple offenders are more burdensome than the restrictions imposed on first-offenders." Id. at 5.

On the issue of rehabilitation, the Statement sets forth that:

> Rehabilitation is necessary for multiple offenders because a person who is arrested three or more times must have a chemical abuse problem. In spite of intense programs to control drunk driving, the chance that an intoxicated driver will be arrested is small, estimated at about 1 in 200 (See Joscelyn, p. 14).[3] It is reasonable, therefore, to assume that a multiple offender must have violated the law regularly. For a person to incur three alcohol- or controlled-substance-related incidents within five years, assuming that the detection ration is 1:200 and that detection is random, the average person would have been driving intoxicated on 600 days, or about one third of the time over the five-year period. Such a person has an alcohol problem in relation to driving, even if alcohol does not damage other aspects of the person's life. Research confirms the proposition that multiple offenders are likely to be chemically dependent. (See, e.g., Results of the National Alcohol Safety Action Projects, p. 41).[4] The National Alcohol Safety Action Project summary shows that the rate of re-arrest for DWI violations is

---

[3] Joscelyn, K. B., Jones, R. K. and Ruschmann, P. A., Alcohol and Highway Safety, University of Michigan Highway Safety Research Institute, Ann Arbor, Michigan, 1982.

[4] U.S. Dept. of Transportation, Results of National Alcohol Safety Action Projects, National Highway Traffic Safety Administration, 1979.

> significantly higher for persons diagnosed as problem drinkers than for persons diagnosed as social drinkers. . . .

Id. at 23. The Statement also provides that, "[t]he abstinence requirement itself is reasonable because multiple offenders are persons who are either chemically dependent or who have a problem of intoxicated driving which is out of control. . . . Medical research has failed to establish a safe method of 'controlled drinking' for alcoholics, who comprise the overwhelming majority of the multiple offender population subject to rehabilitation." Id. at 25.

Finally, on the periods of abstinence required by 7503.1700, subp. 5(C), the Statement reasons that:

> Requiring a person in rehabilitation to demonstrate a history of sobriety is more convincing evidence of future sobriety than a person's mere promise to abstain.
>
> * * *
>
> The periods, like chemical dependency treatment, are medically oriented and are a necessary means of establishing that a person's chemical dependency or chemical abuse problem is brought under control before he or she resumes driving.
>
> The duration of the periods set forth is based on three considerations. First, a longer history of intoxicated driving suggests a chemical abuse problem of progressively greater severity. Second, persons who have undergone rehabilitation once and have failed are less likely to be successfully rehabilitated a second time. Finally, a short abstinence period is not an accurate indicator of future success.

Id. at 27.

After a public hearing, the Administrative Law Judge decided that the Department of Public Safety had established the need for and reasonableness of the graduated periods

of abstinence proposed in the 1985 rules. Id., Ex. K, p. 18.

When the rules were revised in 1991, a six-year period of abstinence was added for individuals who had twice completed rehabilitation. In the 1991 statement of need and reasonableness, the Department of Public Safety stated that:

> Item C [7503.1700, subp. 5(C)] requires a six year period of abstinence for those who have twice completed rehabilitation. The six year period is double the period required for those who complete rehabilitation once. Doubling the abstinence period is reasonable because the person would have once completed rehabilitation, maintained abstinence for three years and yet combined alcohol or substance abuse with driving. Six years is progressive and provides that longer abstinence period, so the agency can reinstate the driver's licence with substantive knowledge that the person is less likely to abuse the driving privilege again. . . .
>
> The addition of new abstinence periods in items C and D creates the opportunity for petitioning for reinstatement and regaining driving privileges after progressively longer abstinence periods. This reasonably balances the individual privilege to drive and the safety of the public in general.

Id., Ex. L, p. 16.

The reasons set forth *supra* demonstrate that the progressive abstinence periods provided in Minn. Rule 7503.1700, subp. 5 is rationally related to the legitimate government interest in maintaining the safety of the State's roads.

Plaintiff objects to the Commissioner's reasons arguing that he is in full remission and thus should be permitted to have a limited license. The testimony of Dr. Varhely relied on by Plaintiff actually weighs in favor of the Commissioner's rule, not in favor of granting Plaintiff a limited license. While Dr. Varhely stated that under the standard set

forth in the DSM4, a person is considered to be in full sustained remission after the person has been abstinent for a period of twelve months, only 65% of individuals who remain abstinent for twelve months are able to remain abstinent for the rest of their lives. See Varhely at 26. Moreover, he testified that, "naturally, the longer the person is abstained the more likely it is that we can better believe that that person will remain abstinent." Id. at 27.

Based on Dr. Varhely's testimony, the chance of an individual remaining abstinent for the rest of his or her life is greater after the person has sustained six years of abstinence as compared to one year. Thus, there is a rational basis for the requirement of a six-year period of abstinence for individuals who have demonstrated an alcohol problem through the accumulation of a series of alcohol-related incidents. [5]

[5] Since there is a rational basis for the complained of rule, Plaintiff's "facial" and "as applied" substantive due process claims are without merit. See WMX Technologies, Inc. v. Gasconade County, Missouri, 105 F.3d 1195, 1198 (8th Cir. 1997).

## Conclusion

Based upon the foregoing, and all of the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment is **DENIED**; and

2. Defendant Commissioner's motion for summary judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 19, 1997

ANN D. MONTGOMERY
United States District Judge