UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

Darryl R. Petschen,

Civ. File No. 3-96-115

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Governor of State of Minnesota,

Defendant.

---

This matter is before the Court upon the Governor of the State of Minnesota's (the State's) Motion to Dismiss the Complaint of Plaintiff Darryl R. Petschen with prejudice. For the following reasons the Court grants the State's motion.

**BACKGROUND**

In 1995 the State of Minnesota amended section 518 of the Minnesota Statutes, the maintenance, support and property portion of its marriage dissolution statute. Particularly concerning the issue before the Court today, the State added subdivision 13 to § 518.551. This addition authorizes a court to order the State's commissioner of public safety to suspend a person's driver's license if the person is in arrears in court-ordered child support or maintenance payments for an amount equal to three-months payments, and establishes an administrative regimen which must be followed before the suspension may take effect. Minn. Stat. § 518.551, subd. 13(a). The amendment took effect January 1, 1996.

FILED APR 26 1996
FRANCIS E. COSAL, CLERK
JUDGMENT ENTD. APR 26 1996
DEPUTY CLERK

Exhibit A
Garry Affidavit
No. 01-1563 RHK/RLE

On January 26, 1996, Darryl R. Petschen, who possesses a commercial driver's license and who is an interstate truck driver, received notice from the Ramsey County Attorney that her office would seek suspension of his driver's license under the new law if he failed either to submit a payment plan, to notify the county attorney of a pending bankruptcy action, or to request a hearing to contest the suspension. Instead of complying with either of these options, Petschen filed this action about two weeks after receiving the notice.

The Court must construe a *pro se* pleading liberally, Young v. Armontrout, 795 F.2d 55, 56 (8th Cir. 1986). So read, Petschen's *pro se* Complaint charges that Minn. Stat. § 518.551, subd. 13 violates his rights of due process and equal protection of the law under the United States Constitution, and also violates the Commerce Clause. Additionally, Petschen asserts that the law is unconstitutional because the executive branch enforces it, and is invalid because federal law preempts it. The State moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

**DISCUSSION**

For the purposes of the Defendant's Motion to Dismiss, the Court takes all facts alleged in Plaintiff's Complaint as true. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to the Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it

appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court applies those standards in this discussion.

The facts as stated above are not in dispute. The ultimate issue presented is whether Minn. Stat. § 518.551, subd. 13 passes constitutional muster as applied to Mr. Petschen. The Court holds that it does. Petschen's preemption argument similarly fails.

## I. Separation of Powers

The Court begins with Mr. Petschen's contention that § 518.551, subd. 13 violates the "separation of powers" by improperly vesting enforcement authority in the executive branch. The State correctly notes that the only logical construction of this charge is that it alleges the suspension law violates the separation of powers of the State, not federal government, since it is the State which enforces this State statute. However, the Eleventh Amendment to the United States Constitution generally bars federal courts from enjoining state officers from violating state law. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89 (1984). And although the Complaint in this case at least captions the Governor as the nominal Defendant, the action is in substance a suit against the State. Thus the claim that the State's law violates the Minnesota Constitution because the State's executive arm enforces it is not actionable in this Court. See Pennhurst, 465 U.S. at 101-102 (reaffirming that despite bringing a suit nominally against an officer, if the claim is substantively against the state it is barred in federal court whether it seeks damages or injunctive relief); Harmon v. Auger,

768 F.2d 270, 275 (8th Cir. 1985) (applying Pennhurst and reversing the magistrate's holding that certain Iowa prison visitation rules violated the Iowa Administrative Procedure Act). Therefore this Court may not consider whether enforcement of Minn. Stat. § 518.551, subd. 13 violates the separation-of-powers doctrine of the Minnesota Constitution.

## II. Commerce Clause

The Constitution vests in Congress the authority "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. While the text of the Commerce Clause does not itself expressly restrain states from impinging interstate commerce, the Supreme Court has interpreted this congressional authority also to limit state interstate commerce regulation. Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon, 114 S.Ct. 1345 (1994); Welton v. Missouri, 91 U.S. 275 (1876). Over the years the Court has developed a standard to determine when a state has violated this negative application of the Commerce Clause — known now as the "dormant commerce clause" — and has summarized the standard:

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues,

> but more frequently it has spoken in terms of "direct" and "indirect" effects and burdens.

Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). This standard has further developed into a two-step analysis. At step one the question is whether the challenged state regulation is a protectionist measure, discriminating against out-of-state articles. This discrimination may appear in one of three forms. The regulation is discriminatory if it (1) is facially discriminatory against out-of-state articles; (2) is facially neutral but has a discriminatory purpose; or (3) is facially neutral but has a discriminatory effect. At step two, the reviewing court must apply the proper level of scrutiny: very strict scrutiny where discrimination is found, and the more lenient Pike balancing test if no discrimination exists. A finding of discrimination, therefore, generally would require invalidation of the state regulation *per se*. See SDDS, Inc. v. South Dakota, 47 F.3d 263, 267-68 (8th Cir. 1995).

On its face Minn. Stat. § 518.551, subd. 13 does not discriminate against out-of-state drivers. By its terms the statute subjects all persons having Minnesota drivers' licenses who fail in their obligation to pay court-ordered child support to possible license suspension. The statute on its face does not threaten out-of-state drivers any more than in-state drivers. Mr. Petschen makes no argument and provides no evidence that the statute is driven by some discriminatory purpose; nor does he argue the statute is effectively discriminatory. The Court concludes that Minn. Stat. § 518.551, subd. 13 does not discriminate against out-of-state drivers.

Because the Court finds § 518.551, subd. 13 to be nondiscriminatory, it must apply a balancing test to determine whether the statute breaches the dormant commerce clause. The question then is whether the statute accomplishes some legitimate local interest with only incidental effects on interstate commerce and whether the burden on commerce is not clearly excessive in relation to the legitimate local interest. Pike, 397 U.S. at 142; Waste Systems Corp. v. County of Martin, Minnesota, 985 F.2d 1381, 1386 (8th Cir. 1993).

The State contends that the statute's purpose is to encourage non-custodial parents to pay their child support arrearages, and argues that this is a legitimate state interest. The Court agrees. Section 518.551(f) requires the Minnesota Commissioner of Human Services to report to the State Legislature the amount collected in child support payments from obligors who have been notified of the intended suspension of their drivers' licenses. That the statute's purpose is to collect child support from those who have become derelict in their financial obligation to their own children is self evident. The end result of increased child support payments, argues the State, leads to a reduction in child poverty and welfare dependency. The State has a legitimate interest in promoting the welfare of children, Henne v. Wright, 904 F.2d 1208, 1215 (8th Cir. 1990), *cert. denied*, 498 U.S. 1032 (1991), and also in preserving the fiscal integrity of its welfare programs. Association of Residential Resources in Minnesota, Inc. v. Gomez, 51 F.3d 137, 141 (8th Cir. 1995). Enhanced collection of child support as facilitated by the threat of loss of the obligor's driver's license is rationally related to and advances these legitimate governmental interests.

The next question is whether any effect on interstate commerce by enforcement of § 518.551, subd. 13 is merely incidental. It is. The statute works to place in jeopardy the driving privileges of anyone who breaches his or her duty to provide for his or her own children. That some who default on their obligation may happen to rely on their licenses to travel interstate for commercial purposes, such as Mr. Petschen, is only incidental to the risk all delinquent parents generally must endure.

The final consideration is whether the burden on commerce is excessive in relation to the legitimate local interest. Petschen offers no indication that the burden on interstate commerce will be anything but negligible, and does not counter the State's argument that the statute would burden only "a few persons who may otherwise drive from state to state." Petschen fails to show that the effect on interstate commerce is "clearly excessive" in relation to the State's legitimate interest to obtain child support from those who have been ordered to provide it but who have failed to comply. For these reasons the Court holds that Minn. Stat. § 518.551, subd. 13(a) does not violate the dormant commerce clause.

## III. Due Process

The Fourteenth Amendment prohibits states from depriving a person of life, liberty or property without due process of law. Mr. Petschen does not clearly articulate whether his due process challenge to § 518.511 is founded upon a procedural or substantive due process theory. Under either analysis, however, his claim cannot survive the State's Motion to Dismiss.

### 1. Procedural Due Process

To defeat the State's Motion to Dismiss his procedural due process claim, Petschen must have a constitutionally protected property or liberty interest in the driver's license at risk of suspension, the State's enforcement of the suspension statute must deprive him of that interest, and the State's scheme must do so without affording him due process of law.

The Court first considers whether Petschen has a constitutionally protected property interest in the driver's license. In a due process analysis,

> [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Sutton v. U.S. Dept. of Housing and Urban Development, 885 F.2d 471, 473 (8th Cir. 1989), *cert. denied*, 493 U.S. 1075 (1990). Looking to Minnesota law, it is clear a person has a property interest in a driver's license. Davis v. Commissioner of Public Safety, 509 N.W.2d. 380, 388 (Minn. Ct. App. 1993) ("A driver's license is an important property interest subject to due process protection."), *aff'd*, 517 N.W.2d 901 (Minn. 1994).

The State clearly seeks to deprive Petschen of this property interest by suspending his driver's license. However, equally clearly, the suspension statute affords Petschen with substantial process. Only persons already subject to and in violation of a court order to provide child support or maintenance payments are subject to the statute. Minn. Stat.

§ 518.551, subd. 13(a). The statute is not triggered until the obligee first moves for suspension and the obligor has been properly served the motion. Id. The obligor has a right to a hearing to contest the suspension, or to avoid suspension by reaching a payment agreement. Id. If the hearing is before an administrative law judge, the obligor is afforded the full assortment of rights provided for contested administrative hearings in Minnesota. Minn. Stat. § 518.5511(e). Whether the hearing is before an administrative law judge or a State district court, the obligor may appeal a decision to suspend to the Court of Appeals of Minnesota. Minn. Stat. § 518.5511, subd. 4(h). The process by which Mr. Petschen's license is now subject to suspension easily satisfies procedural due process.

### 2. Substantive Due Process

Substantive due process protects persons from government action not rationally related to a legitimate government interest, and from government action regulating a fundamental right where that action is neither necessary nor narrowly tailored to further a compelling government interest. See Chesterfield Development Corp., v. City of Chesterfield, 963 F.2d 1102 (8th Cir. 1992).

Because Petschen has no constitutional fundamental right to a Minnesota driver's license, the Court will apply the rational relationship test. The Court holds the State's decision to begin suspension proceedings against Petschen is rationally related to a legitimate government interest. As discussed above, collection of child support as facilitated by the threat of loss of a driver's license is rationally related to and advances the legitimate

governmental interest in promoting the welfare of children and in preserving the fiscal integrity of the State's welfare programs.

As a truck driver, Mr. Petschen needs his commercial driver's license to continue to operate in Minnesota. Arguably, a commercial driver may be less able to make child support payments in a timely fashion once his driver's license has been suspended. And as Mr. Petschen argues, failure to pay child support is not directly related to possessing a commercial driver's license. However, the issue of the wisdom to enforce § 518.551 in this circumstance is not an issue for the Court; the question is simply whether the State is authorized to enforce the statute, and it is. In any event, while suspension of his license may make it less likely that Mr. Petschen himself will be financially able to pay child support, it is quite plausible this suspension and those like it may deter others from ignoring their substantial and necessary financial duty to their children. Suspension of Petschen's driver's license under § 518.551 does not violate substantive due process. See Myers v. Scott County, 868 F.2d 1017, 1019 (8th Cir. 1989) ("the theory of substantive due process is properly reserved for truly egregious and extraordinary cases . . . .").

**IV. Equal Protection**

Mr. Petschen also contends that the suspension statute violates his right to equal protection under the law. He argues first that the statute affects only citizens of Ramsey County, Minnesota, and therefore is unequal as to Minnesota citizens of other counties. One wonders how this argument developed, since all documents submitted by Mr. Petschen in

this matter establish that he resides in Isanti, Minnesota, which is of course not located in Ramsey County. Moreover, the statute applies to everyone within the State's jurisdiction, in whichever county he or she may reside. Petschen's argument lacks merit.

Petschen also argues that "out-of-state welfare recipient's [sic] husbands cannot have their license [sic] suspended," and therefore the statute violates equal protection. The terms of the statute do not limit its application to Minnesota citizens; it applies to any person, without regard to his or her state of residence, who has or is seeking a Minnesota driver's license and who is in three months arrears in court-ordered child support payments. If Mr. Petschen's argument had merit, then similarly violative of equal protection would be all state laws that have as a penalty the suspension of some license issued by that particular state. But such is clearly not the law. Petschen fails to state a claim of a violation of equal protection.

## V. Preemption

Finally, Mr. Petschen asserts that the State issued a commercial driver's license to him "as mandated [by] The Commercial Motor Vehicle Safety Act of 1986," and therefore the State cannot suspend his license. This argument fails.

Principally, under the Supremacy Clause, state laws regulating conduct in an area preempted by federal law are invalid. "[T]he Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The only question is congressional intent; if Congress intended a particular federal enactment to preempt state law, then it does.

California Federal Savings & Loan Association v. Guerra, 479 U.S. 272, 280 (1987) ("In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress.").

When considering whether Congress intended to preempt state law in a particular area, the Court begins with the presumption against preemption. Maryland v. Louisiana, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); Boyle v. Anderson, 68 F.3d 1093, 1099 (8th Cir. 1995), *cert. denied*, 116 S.Ct. 1266 (1996). This presumption is overcome and congressional intent to preempt state law is established in one of three ways: (1) Congress expressly states that the federal law is to preempt state law; (2) congressional intent to preempt state law is inferred where the federal regulatory scheme is so comprehensive that there is no room for supplementary state regulation; or (3) there is a conflict between federal and state regulation such that compliance with both is impossible. See California Federal Savings & Loan Association, 479 U.S. at 280-81.

The Commercial Motor Vehicle Safety Act of 1986 satisfies none of these tests. The Act is codified at 49 U.S.C. §§ 31301 - 31317. First, there is no express statement in the Act that Congress intended the Act to preempt state law. Second, by its terms the Act is not so comprehensive that it leaves no room for supplementary state regulation of commercial drivers' licenses. Indeed, the Act expressly provides the *minimum* standards for testing and

fitness of commercial drivers, § 31305(a), a mechanism to establish the *minimum* list of controlled substances for which drivers may be tested, § 31306(c)(2)(B), a mechanism to establish the *minimum* training requirements for operators of longer combination vehicles, § 31307(b), and a mechanism to establish the *minimum* standards for issuance of commercial drivers' licenses by states. § 31308. The inference from the Act is that Congress intended to impose certain minimum requirements for commercial operators, but did not intend to supplant state law where state law imposes a higher standard, or additional requirements, for the issuance or maintenance of commercial drivers' licenses.

Finally, the Act does not conflict with Minn. Stat. § 518.551, subd. 13(a); compliance with the federal statute does not render it impossible to comply with the State's statute, and compliance with the State's statute does not render it impossible to comply with the federal statute. Nowhere does the Act prohibit a state from suspending the commercial driver's license of a person who is derelict in his duty to financially provide for his children. The Commercial Motor Vehicle Safety Act of 1986 neither expressly nor impliedly preempts Minn. Stat. § 518.551, subd. 13(a).

## CONCLUSION

The Eleventh Amendment bars this Court from considering whether the State's suspension law violates the separation-of-powers doctrine of the Minnesota Constitution. The suspension law does not violate the dormant commerce clause. The process by which Mr. Petschen's license is now subject to suspension satisfies procedural due process and the

law does not violate his substantive due process rights. Petschen fails to state a claim of a violation of equal protection. Finally, the Commercial Motor Vehicle Safety Act of 1986 neither expressly nor impliedly preempts Minn. Stat. § 518.551, subd. 13(a). Thus, Petschen's Complaint, liberally read, fails to state a claim upon which relief can be granted.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. The State's Motion to Dismiss (Clerk Doc. No. 3) is GRANTED; and

2. The Darryl R. Petschen's Complaint is DISMISSED WITH PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: April 26, 1996.

Paul A. Magnuson
United States District Court Judge