UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * * *

Lance Gerald Milliman,

Plaintiff,

vs.

Betty Jean Lindemoen, Charles Weaver, Beverly Anderson, Kim Brandell, Susan Fallek-Rogers, Colia Ceisel, Janice Allen, Dorrie Estebo, Bethany Lindberg, Robert Tipp, Kelly O'Brien, Susan Mykelbye-Williams, Michael Campion, Kay Gavinski, and Jill Prohofsky,

Defendants. Civ. No. 01-1563 (RHK/RLE)

* * * * * * * * * * * * * * * * * * * *

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion for a Temporary Restraining Order.

A Hearing on the Motion was conducted on March 31, 2005, at which time, the Plaintiff appeared Pro Se; Janice Allen, Dorrie Estebo, Bethany Lindberg, Robert Tipp, Kelly O'Brien, and Kay Gavinski (collectively "County Defendants"), appeared by Thomas G. Haluska, Assistant Anoka County Attorney; and Charles Weaver, Beverly Anderson, Kim Brandell, Susan Fallek-Rogers, Colia Ceisel, Susan Myklebye-Williams, Michael Campion, and Jill Prohofsky (collectively "State Defendants"), appeared by Erika Schneller Sullivan, Assistant Minnesota Attorney General. Betty Jean Lindemoen did not appear at the Hearing and, as of yet, has made no appearance in this action.

For reasons which follow, we recommend that the Plaintiff's Motion for a Temporary Restraining Order be denied.

## II. Factual and Procedural History

The Plaintiff commenced this action under Title 42 U.S.C. §1983 against the Defendants, in an effort to obtain an injunction preventing the suspension of his commercial driver's license, due to his failure to pay child support. Notably, Minnesota Statutes Section 518.551, Subdivision 13, allows a State District Court to direct the Commissioner of Public Safety to suspend a the driver's license of a child support obligor, if that obligor "is in arrears in court-ordered child support or

maintenance payments, or both, in an amount equal to or greater than three times the obligor's total monthly support and maintenance payments and is not in compliance with a written payment agreement pursuant to section 518.553."

In December of 2000, the Plaintiff's driver's license was suspended for nonpayment of child support, and was reinstated in February of 2003, after the Plaintiff entered into a payment agreement with Anoka County, under Minnesota Statutes Section 518.553. On January 5, 2005, the Plaintiff received notice from the Defendant Kelly O'Brien, who is an Anoka County child support officer, that he had failed to remain compliant with his payment agreement, and that his failure to bring himself into compliance would result in the suspension of his driver's license. The notice also advised that the Plaintiff could prevent the immediate suspension of driving privileges by making a written request for a Hearing to contest the suspension, which the Plaintiff did on February 2, 2005. See, Minnesota Statutes Section 518.551,Subdivision 13(h). As of the date that we took the Plaintiff's Motion under advisement, no Hearing on the Plaintiff's request had been scheduled.

The Plaintiff presently has a valid Class D ("general"), and Class A ("commercial") driver's license, neither of which are suspended, and neither of which could be suspended, under Minnesota State law, unless a Minnesota District Court

orders that his license be suspended, after a Hearing on the matter. Id.; Minnesota Statutes, Section 171.186; see Affidavit of Jody Oscarson ("Oscarson Aff."), at ¶2. Further, even if his commercial driver's license were suspended, after such a Hearing, the Plaintiff would still be eligible for a limited general driver's license pursuant to Minnesota Statutes Section 171.186, Subdivision 4.

Nevertheless, the Plaintiff asserts that a Temporary Restraining Order is necessary because the suspension of his commercial driver's license would cause him immediate and irreparable injury, since his commercial driver's license is his only means of supporting himself. Specifically, the Plaintiff has averred that he is employed as an over-the-road truck driver, who operates tractor-trailer equipment, and that his employment requires him to maintain a valid commercial driver's license. Accordingly, the Plaintiff contends that, if his commercial driver's license were suspended, he would lose his home, his ability to support himself, and his ability to pay back child support.

The Plaintiff previously brought a Motion for a Temporary Restraining Order, in a separate case where, much like his Complaint here, he asserted that the suspension of his driver's license, by operation of Minnesota Statutes Section 518.551, owing to his failure to satisfy his child support obligations, violated his constitutional rights.

The District Court, the Honorable James M. Rosenbaum presiding, denied the Plaintiff's Motion, and dismissed his Complaint without prejudice. Milliman v. Lindemoen, Civ. No. 00-2574 (Minn., December 29, 2000) ("Milliman I"), Docket No. 9. The United States Court of Appeals for the Eighth Circuit affirmed that decision. See, Milliman v. Lindemoen, No. 01-1225 (8th Cir., July 18, 2001)("Milliman II")[unpublished].

The Plaintiff commenced this action on August 27, 2001 and, on that same day, filed a Motion for a Temporary Restraining Order. After reviewing the Plaintiff's Complaint, the District Court, the Honorable Michael J. Davis presiding, denied the Plaintiff's Motion, and summarily dismissed the Plaintiff's Complaint, finding that it was barred by Milliman I and, specifically, the doctrine of res judicata. Docket No. 7. However, the Court of Appeals for the Eighth Circuit reversed, upon its finding that at least one of the Plaintiff's claims was new, in that it had arisen after the Plaintiff had filed his previous law suit. Milliman v. Lindemoen, 30 Fed. Appx. 669, 2002 WL 372452 (8th Cir., March 11, 2002)("Milliman III"). On February 23, 2005, the Plaintiff submitted an Amended Complaint, in which he included allegations pertaining to the notice of January 5, 2005, and to the efforts to suspend his driver's license for nonpayment of his child support obligations.

## III. Discussion

In his Motion for equitable relief, the Plaintiff seeks to prevent the State and County officials from suspending his commercial driver's license, on account of his failure to pay child support, pursuant to Minnesota Statutes Section 518.551, Subdivision 13. The Plaintiff has also filed a written objection to the suspension of his license, in the Minnesota State Court. Therefore, if granted, the Plaintiff's Motion would effectively enjoin the pending State Court proceedings. Accordingly, we must analyze whether the acceptance of Federal Court jurisdiction would be proper, in light of the abstention principles set forth in Younger v. Harris, 401 U.S. 37 (1971). See Moore v. Sims, 442 U.S. 415, 423 (1979)("The Younger doctrine * * * reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff.").

### A. The Abstention Doctrine.

1. Standard of Review. "As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." Beavers v. Arkansas State Board of Dental Examiners, 151 F.3d 838, 840 (8th Cir. 1998), quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). Nevertheless, "federal courts may abstain from deciding an issue in

order to preserve 'traditional principles of equity, comity and federalism.'" Id., quoting Alleghany Corp. v. McCartney, 896 F.2d 1138, 1142 (8th Cir. 1990). The doctrine of abstention allows Federal Courts "to decline or postpone the exercise of their jurisdiction to permit a state court to decide the matters at issue." Heritage Publishing Co. v. Fishman, 634 F. Supp. 1489, 1496 (D. Minn. 1986), citing Colorado River Water Conservation District v. United States, supra at 813. The "various 'abstention' doctrines * * * are not 'rigid pigeonholes into which federal courts must try to fit cases,' but rather classes of cases in which federal courts may properly exercise their traditional discretion to withhold equitable or quasi-equitable forms of relief." Night Clubs, Inc. v. City of Fort Smith, Arkansas, 163 F.3d 475, 479 (8th Cir. 1998)[internal citations omitted].

In Younger, the Supreme Court held that "federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004). While Younger originally was applied to State criminal proceedings, the use of the doctrine has been extended to civil cases, id.; see also, Huffman v. Pursue, Ltd, 420 U.S. 592 (1975)(holding Younger applicable to civil nuisance proceeding, which sought the closure of a theater

displaying allegedly obscene films), and to state administrative agency proceedings. Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619, 626 (1986).

Younger abstention is appropriate when the following three factors are present: "(1) the existence of an ongoing state judicial proceeding; (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges." Aaron v. Target Corp., supra at 774, citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Even if those three factors are established, abstention should not be granted if "'bad faith, harassment, or some extraordinary circumstance * * * would make abstention inappropriate.'" Id. at 778, quoting Night Clubs, Inc. v. City of Fort Smith, supra at 479. The "exception[s] must be construed narrowly and only invoked in extraordinary circumstances." Aaron v. Target Corp., supra at 778.

2. Legal Analysis. The Plaintiff opposes Younger abstention based upon his assertion that his pending claims have already been heard in State Court, and that the State Court has not afforded him proper relief. Specifically, the Plaintiff contends that his pending suit is a continuation of the action that was dismissed by the District Court, the Honorable James M. Rosenbaum presiding, without prejudice. See,

Milliman I, supra. The Plaintiff maintains that, in dismissing that case, the District Court afforded him the opportunity to return to Federal Court, in the event that the State Court denied him relief. The Plaintiff contends that he has since provided the State Court with an opportunity to address his constitutional claims, but that the State Court did not address those claims.

Far from lending support to his argument, a review of the procedural posture of this case weighs against the Plaintiff's contentions. Specifically, while the Plaintiff's current action is similar to that which was previously dismissed, his assertion that the present action is a mere continuation of the previous action runs contrary to the holding of our Court of Appeals that the Plaintiff's current Complaint contains new claims, "at least one of which may have arisen after he filed the first lawsuit." Milliman III, supra at *1. While the legal theories might be identical, the Plaintiff's Amended Complaint contains allegations, which are as recent as January of 2005. In any event, the pertinent issue for Younger abstention purposes is not whether the Plaintiff has sought relief from the State Court on similar claims, but whether there is a currently pending State Court proceeding, of which the State has a recognized interest, and in which the Plaintiff's claims may be heard. Aaron v. Target Corp., supra at 774.

Upon receiving notice that his driver's license would be suspended for the failure to satisfy his child support obligations, the Plaintiff timely filed a written objection to the suspension which, by operation of Minnesota law, initiated the conduct of a judicial proceeding. See, Minnesota Statutes, Section 518.551, Subdivision 13(h)("If the obligor makes a written request for a hearing * * *, a court hearing must be held."). Thus, we are satisfied that there currently pends an ongoing State proceeding, for the purposes of Younger abstention. See, Ronwin v. Dunham, 818 F.2d 675, 677 (8th Cir. 1987)(providing that the Younger doctrine was "fully applicable" to state administrative proceedings regarding the suspension of the appellant's driver's license); Krall v. Pennsylvania, 903 F. Supp.858, 861(E.D. Pa. 1995)(finding that the suspension of the plaintiff's driver's license, and the appeals process in State Court, satisfied the ongoing State proceeding requirement of Younger); Cook v. Franklin County Municipal Court, 596 F. Supp. 490, 503 (S.D. Ohio 1983)(same).

We are also satisfied that the Plaintiff's Motion implicates important State interests -- namely the provision of parental support for children within the State. See, Duranceau v. Wallace, 743 F.2d 709, 712 (9th Cir. 1984)("It is hard to imagine a more compelling state interest that than the support of its children."); Government of the

Virgin Islands ex rel. Larson v. Ruiz, 145 F. Supp.2d 681, 685 (D. V.I. 2000)("[A]s parens patriae, the government has an extraordinary compelling interest in the physiological and psychological well-being of children.")[internal quotations omitted]; see also, Mills v. Habluetzel, 456 U.S. 91, 104 (1982)(The State has "a strong interest * * * in ensuring that genuine claims for child support are not denied."); Little v. Streater, 452 U.S. 1, 14 1981)("The State admittedly has a legitimate interest * * * in securing support for a child from those who are legally responsible."). The Plaintiff's Motion also implicates the State's "general interest in the effective enforcement of its judgments." Duranceau v. Wallace, supra at 712.

As a result, the only remaining issue is whether the Defendant will be afforded a full and fair opportunity to raise his constitutional claims in the State Court. As is pertinent to the Plaintiff's Motion,, the Supreme Court has observed as follows:

> State courts are the principal expositors of state law. Almost every constitutional challenge -- and particularly ones as far ranging as that involved in this case -- offers the opportunity for narrowing constructions that might obviate the constitutional problems and intelligently mediate federal constitutional concerns and state interests. When federal courts disrupt that process of mediation while interjecting themselves in such disputes they prevent the informed evolution of state policy by state tribunals. Trainor v. Hernandez, 431 U.S. [434, 445 (1977)] * * *. The price exacted in terms of comity would only be

> outweighed if state courts were not competent to adjudicate federal constitutional claims -- a postulate we have repeatedly and emphatically rejected. Huffman, 420 U.S. at 610-611 * * *.
>
> In sum, the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims, * * *.

Moore v. Sims, supra at 429-430.

Based on the Record presented, the Plaintiff has failed to establish that his constitutional claims could not be fairly and fully addressed in the pending State Court proceeding. While some suggestion has been made that a Child Support Magistrate is not competent to address the Plaintiff's constitutional arguments, Minnesota Rules allow the Plaintiff to bring a Motion for Review of the Child Support Magistrate's decision to a Minnesota District Court, where any constitutional issues can be fairly and fully addressed. Rule 376.01, Minnesota General Rules of Practice; see, Vogelsburg v. Vogelsburg, 672 N.W.2d 602, 605 (Minn. App. 2003). If the Plaintiff should be disappointed in the resolution of the constitutional claims by the Minnesota District Court, then those claims would be subject to review by the Minnesota Appellate Courts upon a properly taken appeal. See e.g., State ex rel. Jarvela v. Burk, 678 N.W.2d 68, 72 (Minn. App. 2004)(Minnesota Court of Appeals addressed the plaintiff's equal protection challenge to the Child Support Magistrate's application of

child support statutes); Kameuller v. Kameuller, 672 N.W.2d 594, 599-601 (Minn. App. 2003)(same). Therefore, the pending State Court proceeding provides the Plaintiff with an adequate opportunity to litigate his constitutional claims. See, Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., supra at 629 (finding that an adequate opportunity to litigate would be present where "constitutional claims may be raised in state-court judicial review of [an] administrative proceeding.").

The Plaintiff maintains that Younger does not apply because of the "exceptional circumstances" presented by this case. Specifically, the Plaintiff contends that, since Minnesota Statutes Section 518.551, Subdivision 13, is "patently unconstitutional," the State and County Defendants' efforts to suspend his licence, pursuant to that statute, were undertaken in bad faith, and with the intent to harass him. However, the Plaintiff has abjectly failed to demonstrate that the statute is patently unconstitutional, on its face, and the relevant case law suggests otherwise. See, Petschen v. Governor of State of Minnesota, No. 3-96-115 (D. Minn., April 26, 1996). Further, the State and County have made similar efforts to suspend the licenses of other persons who have failed to satisfy their child support obligations, see id.; State v. Seeber, 2005 WL 406210, at *1 (Minn. App., February 22, 2005), and the Record is bereft of any evidence that the Defendants' apparent intent to suspend his license is motivated by

anything other than his failure to satisfy his child support obligations. Accordingly, the Plaintiff has failed to satisfy any exceptional circumstances, which would render a Younger abstention inappropriate.

In sum, based upon the foregoing, we hold that the application of Younger abstention requires that the Plaintiff's Motion be denied. Nevertheless, in the interest of completeness, we will also address the merits of the Plaintiff's Motion, under the analysis set forth in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109 (8th Cir. 1991)[en banc].

B. The Propriety of a Temporary Restraining Order.

1. Standard of Review. An Injunction is issued when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Education Minnesota Lakeville v. Indep. Sch. Dist. No. 194, 341 F. Supp.2d 1071, 1073 (D. Minn. 2004), citing Dataphase Sys., Inc. v. CL Sys., Inc., supra at 113 (8th Cir. 1991). In deciding a Motion for injunctive relief, a Court must weigh: 1) the threat of irreparable harm to the moving party; 2) the movant's likelihood of success on the merits; 3) the balance between the harm to the movant if the injunction is denied, and the harm to other parties if the injunction is granted; and 4) the public interest. See, Bandag, Inc. v.

Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999); Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999); Dataphase Sys., Inc. v. CL Sys., Inc., supra at 113.

"These factors are not a rigid formula." Bandag, Inc. v. Jack's Tire & Oil, Inc., supra at 926. Rather, when applying these factors, "'a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene.'" Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., supra at 601, quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998), quoting, in turn, Dataphase Sys. v. CL Sys., Inc., supra at 113; see also, General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987)("[C]are must be exercised in balancing the equities, especially since a preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision.").

When seeking a Preliminary Injunction, the burden on the movant "'is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief [he] would obtain after a trial on the merits.'" Sanborn Mfg. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993), quoting Dakota Indus., Inc. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1993); see also,

Education Minnesota Lakeville v. Indep. Sch. Dist. No. 194, supra at 1073 ("[T]he party seeking injunctive relief bears the burden of proving all the Dataphase factors.").

Accordingly, we are obligated to closely examine each of the requisite factors, in order to determine if this is one of those instances in which the "extraordinary remedy" of an injunction is warranted. See, Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), citing Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987). Of course, if preliminary injunctive relief is warranted, the grant of the Motion "does not bind the District Court or the parties in any further proceedings in [the] case, for adjudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., supra at 603.

2. Legal Analysis. As noted, the Plaintiff's Motion seeks to enjoin the Defendant's from suspending his commercial driver's license, pursuant to Minnesota Statutes Section 518.551, Subdivision 13. The Plaintiff has averred that he is an over-the-road truck driver, who operates a tractor trailer, and that, in order to perform such work, he must maintain a valid commercial driver's license. The Plaintiff presently has a valid commercial driver's license which, under the present circumstances, cannot be suspended, by operation of Section 518.551, until the

conduct of a State Court Hearing on his written objections to the suspension. See, Minnesota Statutes Section 518.551, Subdivision 13(h); Oscarson Aff., at ¶2. The Hearing he has properly requested has not been scheduled, through the time that we took the Plaintiff's Motion under advisement, which is consistent with the County Defendants' representation that a Hearing would not be scheduled until the middle part of May of 2005, or June of 2005.

Under some circumstances, the loss of a commercial driver's license can be sufficient to establish irreparable harm. See Padberg v. McGrath-McKechnie, 108 F. Supp.2d 177, 182 (E.D. N.Y. 2000). However, no such showing has been made here since, if his objections are successful in the Minnesota State Court, the Plaintiff's license will not be suspended, and in any event, he will retain his commercial driver's license until such time as the State Court has ruled on those objections. Moreover, even assuming that the Plaintiff has made a cogent showing of irreparable harm, a Temporary Restraining Order would still be improper because he has failed to show a likelihood that he will succeed on the merits of his claim, and because a weighing of the public's interest against the Plaintiff's interest, does not tilt the balance in his favor.

The unlikelihood that the Plaintiff will succeed on the merits of his Complaint weighs against the issuance of a preliminary injunction. In Petschen v. Governor of State of Minnesota, supra, the District Court, the Honorable Paul A. Magnuson presiding, upheld the operation of Minnesota Statutes Section 518.551, Subdivision 13, which is the same statute under attack here, as it applied to a commercial truck driver, against various constitutional attacks, including assertions that the application of the statute violated Separation of Powers principles, the Commerce Clause, Procedural Due Process, Substantive Due Process, Equal Protection, and preemption under the Supremacy Clause. The District Court's Order, in Petschen, is in substantial accord with case law from other jurisdictions, see Thompson v. Ellenbecker, 935 F. Supp. 1037 (D. S.D. 1995); State v. Leuvoy, 2004 WL 944387 (Ohio App., April 29, 2004), rev. denied, 814 N.E.2d 491 (Ohio 2004); Amunrud v. Board of Appeals, 103 P.2d 257 (Wash. App. 2004); Tolces v. Trask, 90 Cal.Reptr.2d 294 (Cal. App. 1999); State v. Beans, 965 P.2d 725 (Alaska 1998); see also, Knight v. City of Mercer Island, 70 Fed. Appx. 413, 2003 WL 21480340 (9th Cir., June 23, 2003), and the Plaintiff has failed to draw our attention to any case law, which has held that the suspension of a commercial driver's license, because of a failure to satisfy child support obligations, violates the United States Constitution. In light of the authority to the contrary, the

unlikelihood that the Plaintiff's Complaint will succeed on its merits weighs against the issuance of a Temporary Restraining Order.

Lastly, weighing the Plaintiff's interest, against the interests of the public, suggests, at best, a neutral result. While the Plaintiff would likely suffer some potential loss of income -- should his commercial driver's license be suspended -- we cannot say, based on the present Record, that such a suspension could occur prior to an adjudication of the Plaintiff's claims on their merits, if at all. Further, as previously noted, the public has an important interest in enforcing child support obligations, which advances the maintenance of the affected children's health and well being.

Accordingly, although we hold that the Younger doctrine requires that the Plaintiff's Motion be denied, we also conclude that, under the applicable standard for the imposition of equitable relief, the Plaintiff's Motion fails on its merits. Therefore, we recommend that the Plaintiff's Motion for a Temporary Restraining Order be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiff's Motion for a Temporary Restraining Order [Docket No. 26] be denied.

Dated: April 29, 2005

s/Raymond L. Erickson
Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 16, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 16, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.