UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

Lance Gerald Milliman,

Plaintiff,

vs.

Betty Jean Lindemoen, Charles Weaver, Beverly Anderson, Kim Brandell, Susan Fallek-Rogers, Colia Ceisel, Janice Allen, Dorrie Estebo, Bethany Lindberg, Robert Tipp, Kelly O'Brien, Susan Myklebye-Williams, Michael Campion, Kay Gavinski, and Jill Prohofsky,

Defendants. Civ. No. 01-1563 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motions of the Defendants Charles Weaver

("Weaver"), Michael Campion ("Campion"), Beverly Anderson ("Anderson"), Kim Brandell ("Brandell"), Susan Fallek-Rogers ("Fallek-Rogers"), Jill Prohofsky ("Prohofsky"), Colia Ceisel ("Ceisel"), and Susan Myklebye-Williams ("Myklebye-Williams")(collectively "State Defendants"), to Dismiss; the Motions of Janice Allen ("Allen"), Dorrie Estebo ("Estebo"), Bethany Lindberg ("Lindberg"), Kay Gavinski ("Gavinski"), Robert Tipp ("Tipp"), and Kelly O'Brien ("O'Brien")(collectively "County Defendants"), to Dismiss; and the Motion of the Plaintiff for a Default Judgment against the Defendant Betty Jean Lindemoen ("Lindemoen"). A Hearing on the Motions of the State and County Defendants was conducted on May 26, 2005, at which time, the Plaintiff appeared pro se; the County Defendants appeared by Thomas G. Haluska, Assistant Anoka County Attorney; and the State Defendants, appeared by John S. Garry, Assistant Minnesota Attorney General. Lindemoen did not appear at the Hearing.[1]

[1]Following our Recommendation of April 29, 2005, that the Plaintiff's Motion for a Temporary Injunction be denied, see, Docket No. 53, which was adopted by the District Court, the Honorable Richard H. Kyle presiding, by Order dated June 16, 2005, see, Docket No. 69, the Plaintiff appealed that denial to the United States Court of Appeals for the Eighth Circuit. In an Opinion dated July 31, 2006, the Court of Appeals dismissed the Plaintiff's interlocutory appeal as moot, because a Minnesota State Court had stayed the suspension of the Plaintiff's commercial driver's license, in an Order dated June 23, 2005, pending a disposition of his Federal action. Upon

For reasons which follow, we recommend that the Motions of both the State and County Defendants to Dismiss be granted, and that the Plaintiff's Motion for a Default Judgment against Lindemoen be denied, as moot.

## II. Factual and Procedural History

The Plaintiff commenced this action under Tile 42 U.S.C. §1983, alleging that the Defendants' violated his equal protection and due process rights, as well as his right of access to the Courts, by engaging in the process of suspending his commercial driver's license, as a result of his failure to satisfy Court ordered child support obligations. Read indulgently, the Amended Complaint alleges that the Defendants conspired to engage in this process, as well as the process for determining and enforcing child support awards.

Specifically, the Plaintiff alleges that the State Administrative Law Judges ("ALJs"), and Child Support Magistrates, who issued decisions that were unfavorable to the Plaintiff, were acting outside of their jurisdiction; that his due process rights were violated when he allegedly did not receive notice of a judicial decision, which ultimately resulted in the suspension of his commercial driver's license; and that

---

the issuance of its Opinion, our deferral of a ruling on the merits of the Plaintiff's cause of action ended.

Minnesota Statutes Section 558.551, Subdivision 13, is unconstitutional. Notably, Section 518.551, Subdivision 13, allows a State Court, and specifically a Child Support Magistrate, to direct the Commissioner of Public Safety to suspend a child support obligor's license to drive, if the obligor "is in arrears in court-ordered child support or maintenance payments, or both, in an amount equal to or greater than three times the obligor's total monthly support and maintenance payments and is not in compliance with a written payment agreement pursuant to section 518.553."

According to the Plaintiff's Complaint, the Anoka County District Court issued a Temporary Child Support Order in a domestic abuse proceeding, in May of 1988. Amended Complaint, at ¶1. In November of 1988, either the Plaintiff, or Lindemoen, who is the Plaintiff's ex-wife, filed a marriage dissolution action in Anoka County District Court. Id. The Plaintiff alleges that, subsequently, in July of 1996, the Defendants forced him to participate in the administrative process for child and medical support Orders, as is set forth in Minnesota Statutes Section 518.5511.[2] Id.

[2]Minnesota Statutes Section 518.5511 was repealed by the Minnesota Legislature in 1999, at approximately the same time that Minnesota Statutes Section 484.702 was enacted. The circumstances surrounding the Minnesota Lgislature's repeal of Section 518.5511 will be addressed, in further detail, in a subsequent section of this Report.

at ¶2. An Administrative Hearing was conducted on January 7, 1997, which was presided over by the Defendant Myklebye-Williams, who is a State ALJ. The Plaintiff alleges that the child and medical support, which had been awarded as part of the domestic abuse proceedings, was also included in the administrative process, and that, as a result, Myklebye-Williams did not have jurisdiction over those proceedings. Furthermore, the Plaintiff alleges that Myklebye-Williams conspired with the other Defendants to violate the Plaintiff's due process and equal protection rights, as well as his First Amendment right of access to the Courts. The Plaintiff also alleges that such conduct constitutes a violation of Article I, Sections 7, 8, and 10, of the Minnesota Constitution. Id. at ¶2.

The Plaintiff asserts that, on or about April 6, 1999, the Defendants again forced him to engage in an Administrative proceeding, pursuant to Minnesota Statutes Section 518.5511, concerning his child and medical support obligations. Id. at ¶3. Ceisel, who is also an ALJ, presided over the Administrative Hearing in this matter, during which the Plaintiff's Motion for a modification of his child support obligations was denied. Much like with Myklebye-Williams, the Plaintiff alleges that Ceisel acted outside of her jurisdiction, and that she conspired with the other Defendants to deprive the Plaintiff of his due process and equal protection rights; his First Amendment right

of access to the Courts; and his rights under Article I, Sections 7, 8, and 10, of the Minnesota Constitution. Id.

The Plaintiff alleges that Tipp, who was an Administrative Law Specialist for Anoka County, participated in each of the Administrative Hearings, as well as a Hearing on February 8, 2000, which was presided over by the Brandell, who is a Child Support Magistrate. Id. at ¶4 According to the Plaintiff, Tipp conceived of the idea of consolidating the support that was awarded as part of the domestic abuse proceeding, with that from the dissolution proceeding. The Plaintiff contends that Tipp's motivation in proposing such an arrangement was to allow Tipp, as a non-lawyer, to proceed with both claims, and because the Rules of Evidence would be relaxed in the Administrative process. The Plaintiff alleges that Tipp conspired with the other Defendants to proceed with the claims administratively, despite the absence of jurisdiction; that Tipp's appearance before the ALJs constituted the unauthorized practice of law under Minnesota law; and that Tipp conspired with the other Defendants to violate his equal protection and due process rights, his right of access to the Courts, and his rights under Article I, Section 7, 8, and 10, of the Minnesota Constitution.

According to the Plaintiff, Lindemoen was a willing participant, and co-conspirator, in the Administrative proceedings of January 7, 1996, and April 6, 1999, and that, as such, her conduct violated the Plaintiff's due process and equal protection rights, his right of access to the Courts, and his rights under Article I, Sections 7, 8, and 10, of the Minnesota Constitution. Specifically, the Plaintiff urges that Lindemoen should have been held responsible for one-half (½) of the expenditures that were made by the "public welfare department" on behalf of the Plaintiff's and Lindemoen's children, but that Anoka County has not actively sought to collect funds from Lindemoen. Id. at ¶5. The Plaintiff also asserts that Lindemoen refused to work, despite being certified as a CNA, HMA, and TMA,[3] but instead, she chose to receive welfare benefits and, as a result, she is now free to work without any restrictions.

On October 11, 1999, the Plaintiff commenced an action in the Anoka County District Court, in an attempt to modify his child and medical support obligations. The Plaintiff contends that the District Court denied his request for relief, and that he was

[3]While the Plaintiff's reference to the acronym "CNA" presumably was intended to denote that Lindemoen has been trained as a "Certified Nursing Assistant," his use of the terms TMA, and HMA, are both undefined, and unclear. However, since Lindemoen's professional training has no bearing on our analysis, we do not address that matter further.

advised that his proper method of recourse was to seek a modification before a Child Support Magistrate. Id. at ¶7. Accordingly, the Plaintiff contends that he was "forced back into a process that had no jurisdiction over the subject matter of the parties." Id. at ¶8.

On November 23, 1999, a Hearing was commenced, on a Motion by the Plaintiff for a Temporary Restraining Order. Id. at ¶9. Fallek-Rogers, who is a Child Support Magistrate, presided over the Hearing, and denied the Plaintiff's Motion, upon a finding that she had jurisdiction over the matter, pursuant to Minnesota Statutes Section 484.702. On December 7, 1999, another Hearing commenced, which was conducted by Anderson, who is another Child Support Magistrate. Like Fallek-Rogers, Anderson found that jurisdiction was present under Minnesota Statutes Section 484.702. Id. at ¶10. The Plaintiff contends that Fallek-Rogers and Anderson conspired with the other Defendants to deprive him of his due process and equal protection rights, his right of access to the Courts, and his rights under Article I, Sections 7, 8, and 10, of the Minnesota Constitution.

The Plaintiff alleges that Lindberg, who is an Assistant Anoka County Attorney, was present at the Hearings on November 23, 1999, and December 7, 1999, as well as a Hearing on February 8, 2000, and apparently, made derogatory, gender-based

comments towards the Plaintiff at the Hearing of November 23, 1999. Id. at ¶11. The Plaintiff also alleges that Lindberg knew the Plaintiff's position concerning the jurisdiction of Child Support Magistrates, and that, as an officer of the Court, she had a duty to advise the presiding Child Support Magistrates of their lack of jurisdiction. The Plaintiff maintains that Lindberg did not satisfy this obligation, and that she conspired with the other Defendants to deprive the Plaintiff of his constitutional rights.

In January of 2000, the Plaintiff again filed a Motion for review before the Anoka County District Court, the Honorable Ellen L. Maas presiding. The Court assertedly denied the Motion for review as premature, and another Hearing was conducted on February 8, 2000. Id. at ¶¶12 and 13. Brandell conducted that Hearing, and ruled that jurisdiction was present under Minnesota law. Subsequently, on January 19, 2000, O'Brien, who is a Child Support Officer for Anoka County, transmitted a letter to the Plaintiff which advised him that she intended to request the suspension of the Plaintiff's commercial driver's licence, and occupational license, pursuant to Minnesota Statutes Section 518.551, Subdivisions 12 and 13, because of the Plaintiff's failure to satisfy his child support obligations. The Plaintiff requested a Hearing to contest the proposed suspension, but allegedly, no Hearing was conducted. Id. at ¶14. Instead, the Plaintiff alleges that he received a second letter from O'Brien, in June

of 2000, which again notified him of O'Brien's intent to seek the suspension of his license. The Plaintiff again requested a Hearing to contest the suspension. Id. According to the Plaintiff, O'Brien also executed Affidavits that were predicated on inaccurate and incorrect information, which were contrary to O'Brien's own personal knowledge.

In July of 2000, Estebo, who is an Assistant Anoka County Attorney, served the Plaintiff with a Motion to Intervene, a Notice of Intention to Suspend Driver's License, a Notice to Call Witnesses, and a Notice of Hearing. The Notices advised the Plaintiff that Anoka County was requesting the immediate suspension of his driver's license, pursuant to Minnesota Statutes Section 518.551, Subdivision 13, as a result of the Plaintiff's failure to satisfy his child support obligations, or enter into a written payment plan. On August 31, 2000, a Hearing was conducted on Anoka County's request to suspend the Plaintiff's driver's license. Anderson presided over the Hearing, at which the Plaintiff again argued that Anderson, as a Child Support Magistrate, did not have jurisdiction over the proceeding. The Plaintiff also argued that he was not allowed to confront witnesses, and that the Assistant Anoka County Attorneys, who had pursued the suspension of his license, had knowledge of the

absence of jurisdiction, and were acting out of a motive to harass the Plaintiff. Id. at ¶16.

Allen, who is also an Assistant Anoka County Attorney, appeared on behalf of Anoka County at the Hearing on August 31, 2000. The Plaintiff alleges that Allen is the head of the Family Law and Mental Health Division -- presumably, of the Anoka County Attorney's Office -- and that Allen is the direct supervisor of the Defendants Lindberg, Estebo, and Gavinski. Given that capacity, the Plaintiff urges that Allen should be held to a higher standard than the other Defendants who are Assistant Anoka County Attorneys. Id. at ¶18.

The Plaintiff alleges that, following the Hearing on August 31, 2000, he did not receive a copy of any written Findings of Fact, Conclusions of Law, and Order, from any of the Defendants, or from the Anoka County Court Administrator. Instead, the Plaintiff asserts that he received a Notice of Suspension from the Minnesota Department of Public Safety, which advised him that his license would be suspended as of December 4, 2000, as a result of his failure to satisfy his child support obligations. The Plaintiff contends that Weaver, who was the Minnesota Commissioner of Public Safety at the time, did not have the authority to suspend his license without a valid Court Order.

As a result of the suspension, the Plaintiff commenced an action in Minnesota State Court. On or about February 7, 2001, the State District Court purportedly denied the Plaintiff's application for leave to proceed in forma pauperis, upon a finding that the Plaintiff failed to follow proper procedure, and that the Court did not have jurisdiction over the Plaintiff's claim. Id. at ¶19. The Plaintiff contends that the State District Court's decision was based on the "faulty premise" that he had been served with notice of filing and a copy of Anderson's Order of September 18, 2000, which presumably resulted in the suspension of the Plaintiff's commercial driver's license. According to the Plaintiff, there is no evidence that the Plaintiff was ever served with a copy of the Order of September 18, 2000. The Plaintiff appealed the dismissal of his claim to the Minnesota Court of Appeals, which affirmed the District Court, assertedly, on the same "faulty" premise as the District Court, and the Plaintiff's Petition for Review to the Minnesota Supreme Court was denied on or about August 15, 2001. Id. at ¶¶20 and 21.

The Plaintiff commenced this action, on August 27, 2001, alleging that the Defendants conspired with each other to deprive him of his due process and equal protection rights, his right of access to the Courts, and his rights under Article I, Sections 7, 8, and 10, of the Minnesota Constitution. The Plaintiff has also clarified

that part of his claim includes an allegation that Anderson conspired with the Defendants to withhold service of the Order of September 18, 2000, which resulted in the suspension of his driver's license. Id. at ¶23. The Plaintiff seeks injunctive relief, as well as damages, against each of the Defendants.

The Plaintiff previously brought an action where, much like his Complaint here, he asserted that the suspension of his driver's license, by operation of Minnesota Statutes Section 518.551, because of his failure to satisfy his child support obligations, violated his constitutional rights. The District Court, the Honorable James M. Rosenbaum presiding, dismissed his Complaint without prejudice, Milliman v. Lindemoen, Civ. No. 00-2574 (JMR/RLE)("Milliman I"), and the Eighth Circuit affirmed that decision. See, Milliman v. Lindemoen, No. 01-1225 (8th Cir., July 18, 2001)("Milliman II")[unpublished].

The present action was initially deemed so similar to the previous case that, after reviewing the Plaintiff's Complaint, the District Court, the Honorable Michael J. Davis presiding, summarily dismissed the Plaintiff's Complaint, finding that it was barred by Milliman I, and specifically, the doctrine of res judicata. Docket No. 7. However, the Court of Appeals for the Eighth Circuit reversed, finding that at least one of the Plaintiff's claims was new, in that it had arisen after the Plaintiff had filed his

previous law suit. Milliman v. Lindemoen, 30 Fed. Appx. 669, 2002 WL 372452 (8th Cir., March 11, 2002)("Milliman III"). On February 23, 2005, the Plaintiff submitted an Amended Complaint, in which he included allegations pertaining to the present efforts to suspend his driver's license for nonpayment of his child support obligations.

According to the Plaintiff's Amended Complaint, his commercial driver's license was suspended from December 4, 2000, until February 26, 2003, when the Plaintiff was purportedly forced to enter into a payment agreement with Anoka County to pay $200.00 per month towards unpaid child support. Id. at ¶26. Gavinski, who is an Assistant Anoka County Attorney, represented the County in that proceeding, and Prohofsky, who is a Child Support Magistrate, presided over the proceeding. The Plaintiff contends that, subsequently, he experienced financial difficulties, and fell behind in his payments. Id. at ¶27 Accordingly, on or about January 5, 2005, O'Brien served the Plaintiff with notice that his driver's license would be suspended for his noncompliance with a payment agreement, and for his failure to satisfy his child support obligations.

The Plaintiff contends that the license suspension process, under Minnesota Statutes Section 518.551, Subdivisions 12 and 13, is unreasonable and arbitrary, in that it allows Child Support Officers, Assistant County Attorneys, and the Commissioner

of Public Safety, to deny Hearings, to bypass the Courts, Statutes, and Rules, and to suspend licenses without any right of appeal. Id. at ¶28. The Plaintiff also contends that the statute treats holders of commercial driver's licenses more harshly than other licensed drivers, and holders of other occupational licenses.

The Plaintiff also contends that Myklebye-Williams abused her discretion, under Minnesota law, by issuing a child support Order which applied retroactively for eight (8) years, and by attributing to the Plaintiff a minimum wage income, without any finding that the Plaintiff was voluntarily employed.

The Plaintiff further maintains that the Defendants have met from time to time, and conspired, under color of Minnesota law, to deprive the Plaintiff of his rights under the Minnesota and United States Constitutions, and that they are trying to ruin him financially and cut off his only means of financial support which, he contends, is his commercial driver's license. Id. at ¶30.

As a result of those alleged violations, the Plaintiff seeks a Declaratory Judgment that the acts, policies, and practices of the Defendants, have violated his rights under the Minnesota and United States Constitution; he requests an injunction, which restrains Anoka County from suspending the Plaintiff's commercial driver's license;

and he prays for $100,000.00 in compensatory and punitive damages from each Defendant, plus costs.

III. Discussion

The State and County Defendants have each filed Motions to Dismiss the Plaintiff's claims against them in their entirety. Both the State and County Defendants predicate their Motions to Dismiss on largely the same grounds, and accordingly, we will address both Motions to Dismiss jointly, before proceeding to the Plaintiff's Motion for a Default Judgment against Lindemoen.

A. The State and County Defendants' Motions to Dismiss.

1. Standard of Review. A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived. See, Moubry v. Independent School District No. 696, 951 F. Supp. 867, 882 (D. Minn. 1996), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte."). "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual

truthfulness of its averments." Moubry v. Independent School Dist. No. 696, supra at 882, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6. Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are offered to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,"

"[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

"When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. Maki v. Allete, Inc., supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

2. Legal Analysis. The Plaintiff's complaint seeks both damages, as well as declaratory and injunctive relief, in the form of an Order enjoining Anoka County from suspending his commercial driver's license pursuant to Minnesota Statutes Section 518.551, Subdivision 13. Both the State and County Defendants oppose the requested injunctive relief on the ground that abstention is proper under the doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971), since an action presently pends in Minnesota State Court for the suspension of the Plaintiff's commercial driver's license under Minnesota Statutes Section 518.551, Subdivision 13, because of his failure to satisfy his child support obligations. The State and County Defendants further assert that the Plaintiff's claims for damages are barred by the Rooker/Feldman doctrine, see, Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of

Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983), and alternatively, that the Plaintiff's Complaint fails to state a claim under Section 1983. Additionally, the State Defendants assert that the Plaintiff's claim for damages against them is barred by the Eleventh Amendment and Judicial Immunity, and the County Defendants assert that the action against them is barred by the doctrine of Qualified Immunity. Each of those contentions will be addressed, in turn.

a. Younger Abstention. The Plaintiff previously filed a Motion for a Temporary Restraining Order, which sought to enjoin the Defendants from proceeding with the suspension of his commercial driver's license pursuant to Section 518.551, Subdivision 13. As we have detailed, in a Report dated April 29, 2005, we recommended that the Plaintiff's Motion be denied because, inter alia, Younger abstention was proper. By Order of June 16, 2005, the District Court, the Honorable Richard H. Kyle presiding, adopted our Report and Recommendation and denied the Plaintiff's Motion for a Temporary Restraining Order, and the Plaintiff's appeal from that Order was dismissed as moot. In responding to the Defendants' Motions to Dismiss, the Plaintiff reiterates the same arguments that were raised support of his Motion for a Temporary Restraining Order, and which we previously found unpersuasive. See, Plaintiff's Memorandum in Opposition to the State of Minnesota

and County of Anoka Defendants' Motions to Dismiss, at unnumbered p. 2, Docket No. 52. As a consequence, in the absence of any changed circumstances, we again find that Younger abstention is proper here, as to the Plaintiff's request that Anoka County be enjoined from suspending the Plaintiff's license pursuant to Minnesota Statutes Section 518.551, Subdivision 13. Nevertheless, in the interests of completeness, we briefly reiterate the bases upon which we find that Younger abstention is proper.

1) Standard of Review. "As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." Beavers v. Arkansas State Board of Dental Examiners, 151 F.3d 838, 840 (8th Cir. 1998), quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). Nevertheless, "federal courts may abstain from deciding an issue in order to preserve 'traditional principles of equity, comity and federalism.'" Id., quoting Alleghany Corp. v. McCartney, 896 F.2d 1138, 1142 (8th Cir. 1990). The doctrine of abstention allows Federal Courts "to decline or postpone the exercise of their jurisdiction to permit a state court to decide the matters at issue." Heritage Publishing Co. v. Fishman, 634 F. Supp. 1489, 1496 (D. Minn. 1986), citing Colorado River Water Conservation District v. United States, supra at 813. The "various

'abstention' doctrines * * * are not 'rigid pigeonholes into which federal courts must try to fit cases,' but rather classes of cases in which federal courts may properly exercise their traditional discretion to withhold equitable or quasi-equitable forms of relief." Night Clubs, Inc. v. City of Fort Smith, Arkansas, 163 F.3d 475, 479 (8th Cir. 1998)[internal citations omitted].

In Younger, the Supreme Court held that "federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004). While Younger originally was applied to State criminal proceedings, the use of the doctrine has been extended to civil cases, id.; see also, Huffman v. Pursue, Ltd, 420 U.S. 592 (1975)(holding Younger applicable to civil nuisance proceeding, which sought the closure of a theater displaying allegedly obscene films), and to State administrative agency proceedings. Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619, 626 (1986).

Younger abstention is appropriate when the following three factors are present: "(1) the existence of an ongoing state judicial proceeding; (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges." Aaron v. Target Corp., supra at 774, citing Middlesex

County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Even if those three factors are established, abstention should not be granted if "'bad faith, harassment, or some extraordinary circumstance * * * would make abstention inappropriate.'" Id. at 778, quoting Night Clubs, Inc. v. City of Fort Smith, supra at 479. The "exception[s] must be construed narrowly and only invoked in extraordinary circumstances." Aaron v. Target Corp., supra at 778.

2) Legal Analysis. As noted, the Plaintiff's Complaint seeks to enjoin Anoka County from suspending his driver's license under Minnesota Statutes Section 518.551, Subdivision 13. The Complaint also alleges that the County Defendants have filed an action to suspend the Plaintiff's license under Section 518.551, Subdivision 13, for his noncompliance with a written payment agreement that was executed by the Plaintiff, which required him to pay a sum of $200.00 per month in back child support. Amended Complaint, at ¶¶26 and 27. The Plaintiff's action presently pends before the Anoka County District Court.

As noted, the Plaintiff opposes Younger abstention for the same reasons as he opposed the application of that doctrine to his previous Motion for a Temporary Restraining Order. Specifically, the Plaintiff contends that his pending suit is a continuation of the action that was dismissed by the District Court, the Honorable

James M. Rosenbaum presiding, without prejudice. See, Milliman I, supra. The Plaintiff maintains that, in dismissing that case, the District Court afforded him the opportunity to return to Federal Court, in the event that the State Court denied him relief. The Plaintiff argues that he has since provided the State Court with an opportunity to address his constitutional claims, but that the State Court did not address those claims.

As we noted in our Report and Recommendation of April 29, 2005, a review of the procedural posture of this case weighs against the Plaintiff's argument. Specifically, while the Plaintiff's current action is similar to that which was previously dismissed, his assertion that the present action is a mere continuation of the previous action runs contrary to the holding of our Court of Appeals, that the Plaintiff's current Complaint contains new claims, "at least one of which may have arisen after he filed the first lawsuit." Milliman III, supra at *1. While the legal theories might be identical, the Plaintiff's Amended Complaint contains allegations, which are as recent as January of 2005. In any event, the pertinent issue for Younger abstention purposes is not whether the Plaintiff has sought relief from the State Court on similar claims, but whether there is a currently pending State Court proceeding, of which the State has a

recognized interest, and in which the Plaintiff's claims may be heard. Aaron v. Target Corp., supra at 774.

Upon receiving notice that his driver's license would be suspended for the failure to satisfy his child support obligations, the Plaintiff timely filed a written objection to the suspension which, by operation of Minnesota law, initiated the conduct of a judicial proceeding. See, Minnesota Statutes, Section 518.551, Subdivision 13(h)("If the obligor makes a written request for a hearing * * *, a court hearing must be held."). Thus, we are satisfied that there currently pends an ongoing State proceeding, for purposes of Younger abstention. See, Ronwin v. Dunham, 818 F.2d 675, 677 (8th Cir. 1987)(providing that the Younger doctrine was "fully applicable" to State administrative proceedings regarding the suspension of the appellant's license to drive); Krall v. Pennsylvania, 903 F. Supp.858, 861(E.D. Pa. 1995)(finding that the suspension of a plaintiff's license to drive, and the appeals process in State Court, satisfied the ongoing State proceeding requirement of Younger); Cook v. Franklin County Municipal Court, 596 F. Supp. 490, 503 (S.D. Ohio 1983)(same).

Moreover, as we found, in our Report and Recommendation of April 29, 2005, the Plaintiff's claims implicate important State interests -- namely, the provision of

parental support for children within the State. See, Duranceau v. Wallace, 743 F.2d 709, 712 (9th Cir. 1984)("It is hard to imagine a more compelling state interest than the support of its children."); Government of the Virgin Islands ex rel. Larson v. Ruiz, 145 F. Supp.2d 681, 685 (D. V.I. 2000)("[A]s parens patriae, the government has an extraordinary compelling interest in the physiological and psychological well-being of children.")[internal quotations omitted]; see also, Mills v. Habluetzel, 456 U.S. 91, 104 (1982)(The State has "a strong interest * * * in ensuring that genuine claims for child support are not denied."); Little v. Streater, 452 U.S. 1, 14 (1981)("The State admittedly has a legitimate interest * * * in securing support for a child from those who are legally responsible."). The Plaintiff's claims also implicate the State's "general interest in the effective enforcement of its judgments." Duranceau v. Wallace, supra at 712.

As a result, the only remaining issue is whether the Defendant will be afforded a full and fair opportunity to raise his constitutional claims in the State Court. As is pertinent to the Plaintiff's Complaint, the Supreme Court has observed as follows:

> State courts are the principal expositors of state law. Almost every constitutional challenge -- and particularly ones as far ranging as that involved in this case -- offers the opportunity for narrowing constructions that might obviate the constitutional problems and intelligently mediate federal

> constitutional concerns and state interests. When federal courts disrupt that process of mediation while interjecting themselves in such disputes they prevent the informed evolution of state policy by state tribunals. Trainor v. Hernandez, 431 U.S. [434, 445 (1977)] * * *. The price exacted in terms of comity would only be outweighed if state courts were not competent to adjudicate federal constitutional claims -- a postulate we have repeatedly and emphatically rejected. Huffman, 420 U.S. at 610-611.
>
> * * *
>
> In sum, the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims * * *.

Moore v. Sims, 442 U.S. 415, 429-30 (1979).

The Plaintiff has persistently urged that a Child Support Magistrate is not competent to address the Plaintiff's constitutional arguments. However, the Minnesota Rules of General Practice allow the Plaintiff to bring a Motion for Review of the Child Support Magistrate's decision to a Minnesota District Court, where any constitutional issues can be fairly and fully addressed. Rule 376.01, Minnesota General Rules of Practice; see, Vogelsburg v. Vogelsburg, 672 N.W.2d 602, 605 (Minn.App. 2003).[4] If the

---

[4]In addition, under Minnesota law, "[a]n appeal may be taken to the court of appeals from a final order or judgment of a child support magistrate or from a final order deciding a motion for review under Rule 376." Rule 378.01, Minnesota General Rules of Practice.

Plaintiff should be disappointed in the resolution of his constitutional claims by the Minnesota District Court, then those claims would be subject to review by the Minnesota Appellate Courts upon a properly taken appeal. See e.g., State ex rel. Jarvela v. Burk, 678 N.W.2d 68, 72 (Minn.App. 2004)(Minnesota Court of Appeals addressed the plaintiff's equal protection challenge to the Child Support Magistrate's application of child support statutes); Kameuller v. Kameuller, 672 N.W.2d 594, 599-601 (Minn.App. 2003)(same). Therefore, the pending State Court proceeding provides the Plaintiff with an adequate opportunity to litigate his constitutional claims, see, Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., supra at 629 (finding that an adequate opportunity to litigate would be present where "constitutional claims may be raised in state-court judicial review of [an] administrative proceeding.").

In sum, to the extent that the Plaintiff's Complaint seeks to enjoin the suspension of his driver's licences under Minnesota law, Younger compels us to abstain from exercising jurisdiction over the claim during the pendency of the State Court action.[5]

[5]For reasons that are more fully discussed in the following portions of this Report and Recommendation, the Plaintiff has also failed to allege any viable

b. The Rooker/Feldman Doctrine. As established by the Rooker/Feldman doctrine, Federal Courts do not possess subject matter jurisdiction over challenges to State Court decisions in judicial proceedings. See, Rooker v. Fidelity Trust Co., supra at 416; District of Columbia Court of Appeals v. Feldman, supra at 476; Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005); see also, Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000); Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997). With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be obtained in the United States Supreme Court. District of Columbia Court of Appeals v. Feldman, supra at 476, citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see also, Title 28 U.S.C. §1257. The Supreme Court, in Feldman, formulated a general rule which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have

constitutional infirmity in the suspension of his commercial driver's license, pursuant to Minnesota Statutes Section 518.551, Subdivision 13. Therefore, even if we were to conclude that the Younger abstention was not appropriate, we would, nonetheless, recommend that the State and County Defendants' Motions to Dismiss be granted, as to the Plaintiff's claim for injunctive relief.

jurisdiction -- from requests for review of specific State Court decisions, over which they have no jurisdiction. As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction. District of Columbia Court of Appeals v. Feldman, supra at 486-87.

Under this test, a Federal Court lacks subject matter jurisdiction "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Charchenko v. City of Stillwater, supra at 983; see also, Bechtold v. City of Rosemount, supra at 1065. Stated otherwise, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring).

Within this Circuit, even when a litigant has not had a fair opportunity to litigate a claim in the prior State Court proceeding, the Rooker/Feldman jurisdictional bar still applies, so long as the merits of the Federal action are "inextricably inter-twined" with the State Court decision. See, In re Goetzman, 91 F.3d 1173, 1178 (8th Cir. 1996), cert. denied sub nom., Goetzman v. Agribank, FCB, 519 U.S. 1042 (1996); Postma

v. First Federal Savings & Loan, 74 F.3d 160, 162 (8th Cir. 1996); but see, Centifanti v. Nix, 865 F.2d 1422, 1433 (3rd Cir. 1989)(failure to raise constitutional claims in State Supreme Court does not bar District Court from hearing those claims when plaintiff did not have "realistic opportunity to fully and fairly litigate" claims in state court).

Accordingly, as expressed in this Circuit, there is no procedural due process exception to the Rooker/Feldman doctrine. In re Goetzman, supra at 1178; Postma v. First Federal Savings & Loan, supra at 162 n. 3, citing Ritter v. Ross, 992 F.2d 750, 752-54 (7th Cir. 1993), cert. denied, 510 U.S. 1046 (1994). Once the Court is satisfied that "the relief requested in the federal action would effectively reverse the state court decision or void its ruling," Charchenko v. City of Stillwater, supra at 983, we lack jurisdiction even if the present theory of relief "allege[s] that the state court's action was unconstitutional." Gisslen v. City of Crystal, Minnesota, 345 F.3d 624, 627 (8th Cir. 2003), quoting District of Columbia Court of Appeals v. Feldman, supra at 486. However, as the Supreme Court has recently clarified, the Rooker/Feldman is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic

Industries Corp., supra at 284; Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005), cert. denied, 126 S.Ct. 2031 (2006); see, Lance v. Dennis, --- U.S. ---, 126 S.Ct. 1198, 1199 (2006).

Here, the Plaintiff's claims against the State and County Defendants are predicated upon their participation in processes under Minnesota law, which resulted in the issuances of child and medical support Orders. Specifically, the Plaintiff alleges that the process which he was afforded in those cases was insufficient, as the ALJs, and Child Support Magistrates, did not have jurisdiction to issue such Orders. The Plaintiff further alleges that the County Defendants were aware of the deficiencies in the process that was provided to him, but nonetheless, continued to participate in the challenged proceedings.

The Plaintiff also asserts that the State and County Defendants violated his constitutional rights when they engaged him in proceedings, which eventually resulted in the suspension of his commercial driver's license, on November 20, 2000, pursuant to Minnesota Statutes Section 518.551, Subdivision 13. Specifically, the Plaintiff alleges that he did not receive notice of the State Court Order, which imposed the suspension, and that Section 518.551, Subdivision 13, is unconstitutional, since it discriminates against persons who hold a commercial driver's license. According to

the Complaint, the Plaintiff challenged the suspension of November 20, 2000, in the Anoka County District Court, which dismissed the Plaintiff's claims, he asserts, because of his failure to follow proper procedure, and upon a finding that it did not have jurisdiction. The Plaintiff appealed that decision to the Minnesota Court of Appeals, which affirmed the District Court, and the Minnesota Supreme Court denied the Plaintiff's Petition for Review on August 15, 2001. The Plaintiff then commenced this action.

Under these circumstances, there is no doubt that the Rooker/Feldman doctrine deprives the Court of subject matter jurisdiction over the Plaintiff's claims concerning the suspension of his driver's license on November 20, 2000. Notably, the Plaintiff, who lost in his State Court challenge to that suspension, now alleges damages as a result of the judicial determination of the State Court. Furthermore, while the Plaintiff asserts that the State Court rulings were predicated on the "faulty premise" that he had been served with a copy of the Order which had directed the suspension of his license, any consideration of the Plaintiff's claim would require us to revisit the Judgment of the State Court, and find that the State Court Judgment was in error. See generally, Brackman v. Indiana, 93 Fed Appx. 989 (7th Cir., March 26, 2004), cert. denied, 543 U.S. 979 (2004).

The Plaintiff has also challenged the Orders that were issued by the ALJs, and Child Support Magistrates, concerning his child and medical support obligations. In addressing those claims, some discussion of the processes by which the challenged Orders were issued is necessary. In 1984, Congress directed the States to establish expedited administrative and judicial procedures for establishing, modifying, and enforcing child support Orders, for people who are receiving public assistance, or who are seeking government assistance in enforcing child support Orders. See, Title 42 U.S.C. §666(a)(2); Holmberg v. Holmberg, 588 N.W.2d 720, 722 (Minn. 1999).

After experimenting with a pilot program, the Minnesota Legislature responded to that directive by enacting Minnesota Statutes Section 518.5511, which established an expedited administrative process for child and medical support Orders. Under that statute, contested child and medical support proceedings were presided over by ALJs, who were vested with "'all powers, duties, and responsibilities conferred on judges of district court to obtain and enforce child and medical support and parentage and maintenance obligations,' including the power to issue subpoenas, conduct proceedings according to administrative rules in district court courtrooms, and issue warrants for failure to appear." Holmberg v. Holmberg, supra at 723, quoting Minnesota Statutes Section 518.5511, Subdivisions 1(e), 4(d), 4(e), and 6.

Additionally, the statute authorized ALJs to "modify child support orders, even those granted by district courts." Id., citing Minnesota Statutes Section 518.5511, Subdivisions 1(a) and 1(b). The decision of the ALJ was "appealable to the court of appeals in the same manner as a decision of the district court." Minnesota Statutes 518.5511, Subdivision 4(j).

In January of 1999, the Minnesota Supreme Court held that the expedited administrative process, that was established in Section 518.5511, was invalid under the Separation of Powers doctrine, as articulated in Article III, Section 1, of the Minnesota Constitution. Specifically, the Court noted that, under Article VI, Section 1, of the Minnesota Constitution, "[t]he judicial power of the state is vested in a supreme court, a court of appeals, if established by the legislature, a district court and such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish," and that, under Article VI, Section 3, of the Minnesota Constitution, the District Court has original jurisdiction in all civil and criminal cases. See, Holmberg v. Holmberg, supra at 724. As a result, the Minnesota Supreme Court found that, by vesting ALJs with comparable responsibilities and powers as held by the State District Courts, including the authority to modify an Order of the District Court, "the legislature has delegated to an executive agency the district

court's inherent equitable power," and such a delegation, therefore, was invalid. Id. at 725-26. Consequently, the administrative process that was established by Section 518.5511 was determined to be invalid.

While the Court found Section 518.5511 to be invalid, it explicitly declined to give its ruling a retroactive effect, explaining as follows:

> [R]etroactive application will not only swamp the district court with litigants previously forced to participate in the administrative process, but will also have a negative emotional impact on families whose "final" orders are undone. Such a result would be very disruptive without advancing the separation of powers principle. Therefore, our ruling shall be prospective except as to the parties before us who shall have their cases decided in accordance with this opinion.

Id. at 727.

The Court also stayed its decision until July 1, 1999, in order to provide the Legislature with time to amend the laws, "in light of the substantial hardship immediate judgment would wreak." Id. Accordingly, prior to July 1, 1999, the only persons for whom the ruling of the Court was effective were the plaintiffs in Holmberg.

In response to the Holmberg decision, the Minnesota Legislature enacted Minnesota Statutes Section 484.702, which modified the expedited process in several respects. Notably, the statute authorized the Chief Judge of each State Judicial District

to appoint Child Support Magistrates, who would preside over the expedited child support Hearing process. The Child Support Magistrates would have to be confirmed by the Minnesota Supreme Court, and were to be considered Judicial Officers. Under Rules that were subsequently adopted by the Minnesota Supreme Court, "[a]ny party may bring a motion for review of the decision and order or judgment of the child support magistrate" before the State District Court, see, Rule 376.01, Minnesota General Rules of Practice, or the State Court of Appeals. See, Rule 378.01, Minnesota Rules of General Practice.

Here, based on the Plaintiff's Complaint, it appears that the Plaintiff's claims against Mykelbye-Williams, Ceisel, and Tipp, concern Orders that were issued pursuant to the administrative process that was established in Section 518.5511, while the claims against Fallek-Rodgers, Anderson, and Brandell, Prohofsky, Lindberg, and Gavinski, arise from Orders that were issued pursuant to the expedited process that was set forth in Section 484.702. The distinction is significant for the purposes of the Rooker/Feldman doctrine, because "the doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency." Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 644 n. 3 (2002); see, Harris v. New York State Department of Health, 202 F. Supp.2d 143,

161 (S.D. N.Y. 2002)("Rooker-Feldman applies to bar district court review of only state judicial decisions, and not to unreviewed determinations of state bodies acting in administrative, legislative, or ministeral roles."). Accordingly, as ALJs who were presiding over the administrative process, the rulings of Myklebye-Williams and Ceisel, do not, in and of themselves, allow for the application of the Rooker/Feldman doctrine.

While the Record is bereft of any suggestion that the Plaintiff appealed the Orders of Myklebye-Williams, and Ceisel, to the Minnesota Court of Appeals under Section 518.5511, Subdivision 4(j), the Plaintiff's pleading does reflect that he did challenge those Orders in the Anoka County District Court, on or about October 11, 1999, and that his request for review was denied by the State Court. Amended Complaint, at ¶7. Accordingly, to the extent that any consideration of the Plaintiff's claims against Myklebye-Williams, Ceisel, and Tipp, would require us to review the decision of the State District Court in denying the Plaintiff's request to modify or abrogate the decisions of Myklebye-Williams and Ceisel, the Rooker/Feldman doctrine would deprive us of jurisdiction. See, LAM Recovery, Inc. v. Department of Consumer Affairs, 377 F. Supp.2d 429, 430, 435 n. 43 (S.D. N.Y. 2005)(the

determination of an ALJ that was appealed to the New York Supreme Court constituted a State Court Judgment for the purposes of Rooker/Feldman).

The Plaintiff has also challenged a number of Orders that were issued by Child Support Magistrates, following the process that was articulated in Minnesota Statutes Section 484.702. Unlike the process that was set forth in Section 518.5511, which was an administrative process, see, Holmberg v. Holmberg, supra at 725-26, Section 484.702 creates a judicial process for the expedited consideration of child and medical support Orders. Specifically, the statute directs the Minnesota Supreme Court to establish rules and procedures for the expedited child support hearing process, and the authority to appoint Child Support Magistrates is vested entirely with Minnesota Judicial Officers, as opposed to any administrative agency. Therefore, we find that the Orders that were issued by Fallek-Rodgers, Anderson, Brandell, and Prohofsky, are the "functional equivalent of a state-court judgment," for the purposes of the Rooker/Feldman doctrine. See, Mosby v. Ligon, 418 F.3d 927, 931-32 (8th Cir. 2005)("Because the [Arkansas Committee on Professional Conduct] is created and appointed by the Arkansas Supreme Court, operates pursuant to rules promulgated by that court, and is subject to review by that court, the Committee's decision to discipline [the plaintiff] is the functional equivalent of a state-court judgment.").

Accordingly, we find that, for purposes of the Rooker/Feldman doctrine, the Plaintiff is the loser of State Court proceedings; that his claims allege injuries that were caused by the State Court Judgments; and that consideration of the Plaintiff's Federal claims would require a review of the State Court Judgments.

Accordingly, we turn to the question of whether the State Court Judgments were issued before the Federal action commenced. See, Exxon-Mobil v. Saudi Basic Industries, supra at 284. As our Court of Appeals recently explained:

> Exxon Mobil makes clear that the Rooker/Feldman doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings have ended. See id. at 1527 ("[N]either Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court."); see also Mothershed v. Justices of Supreme Court, 410 F.3d 602, 604-05 n. 1 (9th Cir.2005) (determining whether state-court proceedings were complete as the first step of a post-Exxon Mobil Rooker/Feldman analysis). There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action. Rather, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." Exxon Mobil, 125 S.Ct. at 1527.

Dornheim v. Sholes, supra at 923.

Here, the Plaintiff's claims against all of the Defendants, with the exception of Prohofsky and Gavinski, were filed on August 27, 2001. At that time, the Minnesota Supreme Court had denied the Plaintiff's Petition for Review, in his State Court challenge to the suspension of his license. Moreover, the time for the Plaintiff to appeal the Judgments of Fallek-Rogers, Anderson, and Brandell, had lapsed. See, Rule 104.01, Minnesota Rules of Civil Appellate Procedure (allowing sixty (60) days from entry of Judgment to appeal); Rule 374.01, Minnesota Rules of General Practice (applying same time period for the appeal of a final Order or Judgment of a Child Support Magistrate). Accordingly, the Plaintiff's Federal claims against Lindemoen, Weaver, Campion, Anderson, Brandell, Fallek-Rogers, Allen, Estebo, Lindberg, Tipp, and O'Brien, were filed after the State Court Judgments, from which the Plaintiff seeks relief, became final.

The Plaintiff's Federal action against Prohofsky and Gavinski was commenced on February 23, 2005, when the Plaintiff filed his Amended Complaint. The Plaintiff's claims against Prohofsky and Gavinski are predicated on the Judgment, which was issued on February 25, 2003, in which the Plaintiff's driver's license was reinstated, upon the agreement of the Plaintiff to pay the sum of $200.00 a month towards his back child support obligations. See, Affidavit of Kay Gavinski, at Exh. A and B.

Accordingly, the Plaintiff's Federal claims against Prohofsky and Gavinski were also filed after the State Court Judgment became final.

In sum, we find that the Plaintiffs claims are precisely of the kind which continue to fall within the Rooker/Feldman doctrine -- namely, those "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." See, Exxon Mobil Corp. v. Saudi Basic Industries Corp., supra at 284. Therefore, we are without Federal Subject Matter Jurisdiction, to the extent that the Plaintiff's claims require us to review the decisions of Fallek-Rogers, Anderson, Brandell, and Prohofsky.

Since we find that Younger abstention is proper for the Plaintiff's claim for injunctive relief, and that his claim for damages is barred by the Rooker/Feldman doctrine, we conclude that dismissal is proper as to the claims against each of the State and County Defendants. Nevertheless, in the interests of completeness, we address the merits of the Plaintiff's Section 1983 claim, as well as the State and County Defendants' assertions of immunity.

c. The Merits of the Plaintiff's Section 1983 Claim. To state a claim under Section 1983, the plaintiff must allege facts which, if true, would prove "that the

defendant has deprived him of a right secured by the 'Constitution and laws of the United States' * * * [and] that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage of any State or Territory.'" Adickes v. S.H. Kress & Co, 398 U.S. 144, 150 (1970); Title 42 U.S.C. §1983. Section 1983 does not create any independent rights, but is merely a vehicle for the enforcement of other rights which are protected under the Constitution and Federal law. Alsbrook v. City of Maumelle, 184 F.3d 999, 1012 (8th Cir. 1999). Therefore, in order to sufficiently state a Section 1983 claim, a claimant must allege the violation of a right protected by the Constitution, or by Federal law.

Here, the Plaintiff has challenged the processes for the issuance of child and medical support Orders under Sections 518.5511, and 484.702, as well as the process for suspension of a child support obligor's commercial driver's license under Section 518.551, Subdivision 13, upon the ground that those processes violate his due process and equal protection rights, as well as his right of access to the Court.[6] While the

---

[6]The United States Supreme Court has instructed that the Eleventh Amendment generally prohibits Federal Courts from enjoining State officials from violating State law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 124-25 (1984). Accordingly, while the Plaintiff has alleged violations of his rights under the Minnesota Constitution, as well as other Minnesota State laws, we are obligated to limit our consideration to the Plaintiff's claims under the United States Constitution, and

Plaintiff does not distinguish between substantive due process and procedural due process, we will construe his Complaint to assert both types of claims, and each constitutional claim will be addressed, in turn.

1) Procedural Due Process. The constitutionality of Section 518.551, Subdivision 13, has previously been challenged unsuccessfully on both due process and equal protection grounds. See, Petschen v. Governor of State of Minnesota, Civ. File No. 3:96-115 (PAM/JGL)(April 26, 1996). In Petschen v. Governor of State of Minnesota, supra, the District Court, the Honorable Paul A. Magnuson presiding, upheld the operation of Minnesota Statutes Section 518.551, Subdivision 13, as it applied to a commercial truck driver, against various constitutional attacks, including, inter alia, assertions that the application of the statute violated the plaintiff's right to procedural due process, substantive due process, and equal protection. In so holding, the Court recognized that the plaintiff had a constitutionally protected property interest in his driver's license, id. at p. 8, citing Davis v. Commissioner of Public Safety, 509 N.W.2d 380, 388 (Minn. App. 1993), aff'd, 517 N.W.2d 901 (Minn. 1994); see, Bell v. Burson, 402 U.S. 535, 539 (1971),

---

Federal law.

and that the suspension of a driver's license, pursuant to Section 518.551, Subdivision 13,constituted a deprivation of that interest. Nevertheless, the Court held that the process, which was provided under the statute, was more than sufficient to safeguard the plaintiff's procedural due process rights. As the Court explained:

> Only persons already subject to and in violation of a court order to provide child support or maintenance payments are subject to the statute. Minn. Stat. 558.551, subd. 13(a). The statute is not triggered until the obligee first moves for suspension and the obligor has been properly served the motion. Id. The obligor has a right to a hearing to contest the suspension, or to avoid suspension by reaching a payment agreement. If the hearing is before an administrative law judge, the obligor is afforded the full assortment of rights provided for contested administrative hearings in Minnesota. Minn. Stat. §518.5511(e). Whether the hearing is before an administrative law judge or a State district court, the obligor may appeal a decision to suspend to the Court of Appeals of Minnesota. Minn. Stat. §518.5511, subd. 4(h).

Id. at 8-9.

After conducting an independent review of Section 518.551, Subdivision 13, we concur with the Court's finding in Petschen, that the process which is afforded to a child support obligor under the statute, is more than sufficient to safeguard the Plaintiff's procedural due process rights, and we note that similar arguments have been rejected by Courts from a number of other jurisdictions. See, Thompson v.

Ellenbecker, 935 F. Supp. 1037 (D. S.D. 1995); State v. Leuvoy, 2004 WL 944387 (Ohio App., April 29, 2004), rev. denied, 814 N.E.2d 491 (Ohio 2004); Amunrud v. Board of Appeals, 103 P.2d 257 (Wash. App. 2004); Tolces v. Trask, 90 Cal.Reptr.2d 294 (Cal. App. 1999); State v. Beans, 965 P.2d 725 (Alaska 1998).

The Plaintiff's challenges to the process, that was afforded to him in the Hearings before the ALJs and Child Support Magistrates, are similarly deficient. Notably, Section 518.5511 afforded the parties, to a contested administrative proceeding, the right to a Hearing before an ALJ, under the rules of the Office of Administrative Hearings, and the ruling of the ALJ was appealable to the Minnesota Court of Appeals. See, Minnesota Statutes Section 518.5511, Subdivisions 4(e) and 4(h). Similarly, under the process that was established in Section 484.702, the parties to the expedited child support process are entitled to a Hearing, at which they may present evidence and cross-examine an adverse party, or any witness for an adverse party. See, Rules 364.01, 364.09, and 364.11, Minnesota General Rules of Practice. Furthermore, a party to the expedited child support process may seek review of an Order of a Child Support Magistrate with the Minnesota District Court, or with the Minnesota Court of Appeals. Rules 376.01 and 378.01, Minnesota General Rules of Practice. Therefore, both the administrative process that was established in Section

518.5511, and the expedited process set forth in Section 484.702, and the corresponding Rules of Procedure, provided the Plaintiff with process protections that were more than sufficient under the Fourteenth Amendment.

2) Substantive Due Process. To the extent that the Plaintiff has attempted to assert a substantive due process claim, that contention is similarly without merit. Undoubtedly, the Constitution embodies a concept of substantive due process, which prevents Government actors from engaging in conduct that shocks the conscience, or that interferes with rights which are implicit in the concept of ordered liberty. United States v. Salerno, 481 U.S. 739, 746 (1987); see, Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002), quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998); Brown v. Nix, 33 F.3d 951, 953 (8th Cir. 1994). Substantive due process claims are, therefore, analyzed under two tests. First, the Government is forbidden from infringing upon certain "fundamental" liberty interests to any degree -- no matter what process is provided -- unless the infringement is narrowly tailored to serve a compelling governmental interest. Weiler v. Purkett, supra at 1051, citing Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 1447 (1993). Second, the Government's conduct somehow "must shock the conscience or otherwise offend our judicial

notions of fairness, or must be offensive to human dignity." Id. citing Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989).

Given the Plaintiff's pleading, we find no basis to conclude that the Plaintiff possesses any fundamental right which would be implicated, in any conceivable fashion, by the suspension of his commercial driver's license, or the imposition of child support obligations. See, Petschen v. Governor of State of Minnesota, supra at 9-10. This seems particularly so because, in this Circuit, one seeking to extend substantive due process rights, beyond their current frontiers, bears a heavy burden. Id. at 954. Since the Plaintiff has offered no support for a substantive due process claim, he has failed to carry -- let alone advance -- that burden. As a general proposition, interests protected under "substantive due process" involve those rights "so rooted in the traditions or conscience of our people as to be ranked as fundamental." United States v. Salerno, supra at 751. Therefore, "'[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" Reno v. Flores, supra at 1447, quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).

Since the Plaintiff offers no authority to suggest that, as an unavoidable consequence of the imposition of child support obligations, or the suspension of his

drivers license pursuant to Section 518.551, Subdivision 13, he would suffer a fundamental loss, and because we find that the intention of the State and County to ensure the support of children in the State, by imposing restrictions on the driving privileges of those persons who fail to satisfy their support obligations, neither "shock[s] the conscience[,] * * * offend[s] our judicial notions of fairness," nor is otherwise "offensive to human dignity," Brown v. Nix, supra at 953, the Plaintiff's substantive due process claim necessarily fails. See, Petschen v. Governor of State of Minnesota, supra at p. 10 ("Suspension of [the plaintiff's] driver's license under [Section] 518.551 does not violate due process."); see also, Title 42 U.S.C. §666(a)(16).

3) Equal Protection. The Fourteenth Amendment's Equal Protection Clause requires Government actors to treat persons, who are similarly situated, alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); see also, Creason v. City of Washington, 435 F.3d 820, 823 (8th Cir. 2006). Here, the Plaintiff has not alleged that he is a member of a suspect class or that a fundamental right has been infringed, and accordingly, the Plaintiff's claim is subject to rational basis review. See, Gillmore v. County of Douglas, State of Nebraska, 406 F.3d 935, 937 (8th Cir. 2005); see, e.g., Thompson v. Ellenbecker, supra at 1041.

"Under this standard, legislation is presumed valid if the classification drawn by the legislation is rationally related to a legitimate state interest." Red River Service Corp. v. City of Minot, North Dakota, 146 F.3d 583, 590 (8th Cir. 1998), citing City of Cleburne v. Cleburne Living Center, Inc., supra at 440. Accordingly, the Plaintiff must "negate 'every conceivable basis which might support the classification.'" Id.

Here, the Plaintiff asserts that Section 518.551, Subdivision 13, treats the holders of a commercial driver's license differently than the holders of other occupational licenses, or other licensed drivers. However, the Plaintiff does not clarify this contention, and it does not appear that Section 518.551, Subdivision 13, makes any distinction between the suspension of a commercial driver's license, and the suspension of other classes of driver's licenses. Similarly, the requirements that are set forth in Section 518.551, Subdivision 12, which govern the suspension of occupational licenses, appears to be substantially similar to the requirements that are being challenged by the Plaintiff. Notably, both provisions allow for the suspension of a child support obligor's license -- a driver's license in Subdivision 13, and an occupational license in Subdivision 12 -- where the obligor "is in arrears in court-ordered child support or maintenance payments or both in an amount equal to or greater than three times the obligor's total monthly support and maintenance payments

and is not in compliance with a written payment agreement * * * that is approved by the court, a child support magistrate, or the public authority." Similarly both provisions provide similar methods for the suspension of the license, and for the obligor to contest the license suspension.

As a consequence, the distinction that has been identified by the Plaintiff, between the holder of a commercial driver's license and either other licensed drivers, or the holder of other types of occupational licenses, appears to be largely illusory. Moreover, to the extent that any distinction can be discerned from the statute, the Plaintiff has failed to demonstrate how such a distinction would not be rationally related to a legitimate State interest. See, Thompson v. Ellenbecker, supra at 1041 ("Restrictions on renewals of driver's licenses imposed on child support obligors * * * [are not] so unrelated to the achievement of the legitimate purpose of collecting child support so as to be irrational."); see also, Petschen v. Governor of State of Minnesota, supra at 11. Therefore, the Plaintiff has failed to allege a violation of his equal protection rights.

4) Access to the Courts. Read indulgently, the Plaintiff's Complaint appears to allege that, by requiring him to participate in the processes, which were established in Sections 518.5511, 484.702, and 518.551, Subdivision 13,

the Defendants somehow deprived him of his access to the Courts. However, Section 518.5511 explicitly allowed for judicial review to the Minnesota Court of Appeals, and the process that was established, under Section 484.702, also allows for judicial review to the Minnesota District Court and/or the Minnesota Court of Appeals. See, Rules 376.01 and 378.01, Minnesota General Rules of Practice. As such, the Plaintiff has failed to allege that he has been deprived of his constitutional right of access to the Courts. Cf., Marozsan v. United States, 849 F. Supp. 617, 645 (N.D. Ill. 1994)("The right of access does not mandate jurisdiction where none exists or the creation of a cause of action where none has been recognized," and "[the plaintiff] has always had access to the courts, though courts may not have had jurisdiction over the particular claims that he wishes to press.").

In sum, the allegations that are contained in the Plaintiff's Complaint are insufficient to establish any viable constitutional claim, or any other violation of Federal law. Therefore, the Plaintiff's claims necessarily fail on their merits as well.

d. Immunity. As an additional ground for dismissal, the State Defendants have asserted that the Plaintiff's claims for damages are barred by the Eleventh Amendment and Judicial Immunity. Specifically, the State Defendants urge that the Plaintiff's official capacity claims are barred by the Eleventh Amendment, and

that his individual capacity claims are barred by Judicial Immunity. Similarly, the County Defendants urge that dismissal is proper as to the Plaintiff's claims against them, because they are entitled to qualified immunity. We agree.

1) Eleventh Amendment Immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. For over a century, the Amendment has been understood to stand for the proposition that a non-consenting State is immune from Federal Court suits by its own citizens, as well as by citizens of another State. See, Kimel v. Florida Board of Regents, 528 U.S. 62, 72 (2000); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)(such suits were "not contemplated by the constitution when establishing the judicial power of the United States"). In effect, the Eleventh Amendment immunizes from suit a "state agency or official * * * if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), quoting Pennhurst State Sch. & Hosp. v. Halderman, 465

U.S. 89, 123 n. 34 (1984); see also, Regents of the University of California v. Doe, 519 U.S. 425 (1997); Edelman v. Jordan, 415 U.S. 651 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 614-15 (2002).

Over the years, the Supreme Court has fashioned a patchwork of exceptions to the Eleventh Amendment's limitation on Federal Court jurisdiction, as that doctrine was initially expressed in Hans v. Louisiana, supra. Under the doctrine of Ex parte Young, 209 U.S. 123 (1908), a Federal Court retains jurisdiction, notwithstanding the Eleventh Amendment, to direct State officials to conform their practices to the requirements of Federal law, even though such an injunction might have collateral effects upon a State Treasury.[7] See, Edelman v. Jordan, supra at 667-68; Milliken v. Bradley, 433 U.S. 267, 289 (1977). Such an exercise of jurisdiction, however, does not extend to the award of retroactive relief which requires the payment of funds from the State Treasury. See, Edelman v. Jordan, supra at 667-68. Thus, the Eleventh

[7]In Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 126 (1984), the Court held that pendent State law claims, for even prospective injunctive relief, were barred by the Eleventh Amendment and, to that extent, the doctrine in Ex parte Young was substantially narrowed.

Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, because such lawsuits are essentially "for the recovery of money from the state." Ford Motor Co. v. Department of the Treasury, supra 464; see also, Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)("[N]either a State nor its officials acting in their official capacities are 'persons' under §1983" when sued for damages.).

Here, each of the State Defendants is an officer of the State of Minnesota, and the Plaintiff has not identified any waiver of Eleventh Amendment immunity, nor has our independent research uncovered any waiver, for his pending Section 1983 claim. Therefore, the Plaintiff's claim for damages against the State Defendants, in their official capacities, is barred by the Eleventh Amendment.

Moreover, the Plaintiff's individual capacity claims against each of the State Defendants, with the exception of Weaver and Campion,[8] are barred by the doctrine of judicial immunity. Aside from Weaver and Campion, each of the State Defendants

[8]Campion is identified in the Plaintiff's Complaint as the current Commissioner of Public Safety for the State of Minnesota. However, while the Plaintiff purports to have brought both official and individual capacity claims against Campion, he has not alleged that Campion engaged in any of the conduct that provides the basis for the Plaintiff's claims.

are either Child Support Magistrates, or ALJs, to which the doctrine of judicial immunity applies. See, Butz v. Economou, 438 U.S. 478, 514 (1978).[9] Moreover, all of the alleged acts of the State Defendants, with the exception of Weaver and Campion, were in the performance of their judicial functions. See, Edlund v. Montgomery, 355 F. Supp.2d 987, 990 (D. Minn. 2005)("[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."), quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978); Mireles v. Waco, 502 U.S. 9, 11 (1991)("[L]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages," and "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily

[9]The Plaintiff makes some suggestion that, if the Defendants, who are employed as Child Support Magistrates, are paid by the County, as opposed to the State, then they would not be entitled to judicial immunity. The Plaintiff has not provided any authority for that proposition, which appears to be misguided. Specifically, under the analysis in Butz v. Economou, 438 U.S. 478, 511 (1978), it is the nature of the official's responsibilities, as opposed to the governmental entity that employs the official, which is determinative of the official's entitlement to judicial immunity. See also, Minnesota Statutes Sections 484.701, Subdivision 3 (providing that Child Support Magistrates are judicial officers and employees of the State for the purposes of tort liability).

cannot be resolved without engaging in discovery and eventual trial.")[internal citations omitted].

The Plaintiff has urged that judicial immunity is inapplicable because the Defendant ALJs and Child Support Magistrates acted in the complete absence of any jurisdiction. The Plaintiff does not provide any authority for his assertion that jurisdiction was lacking, but it appears from his pleading that his jurisdictional argument is predicated on the alleged inclusion of child support, which had been awarded as part of a domestic abuse proceeding, in the expedited proceedings. Section 518.5511, Subdivision 1(b), and Section 484.702, Subdivision 1(c), both contain language which suggests that matters involving domestic abuse fall outside of the expedited process.[10] However, the Minnesota Court of Appeals recently rejected

---

[10]In pertinent part, Section 518.5511, Subdivision 1(b), provided as follows:

> Nothing contained herein shall prevent a party, upon timely notice to the public authority, from commencing an action or bringing a motion for the establishment, modification, or enforcement of support, or enforcement of maintenance orders if combined with a child support proceeding in district court, if additional issues involving domestic abuse, establishment or modification of custody or visitation, property issues, or other issues outside the jurisdiction of the administrative process, are part of the motion or action, or from proceeding with a motion or action brought by

a somewhat similar jurisdictional argument, see, Larsen v. Larsen, 2004 WL 1444939 at *2-3 (Minn. App., June 29, 2004)(finding that Child Support Magistrate properly exercised jurisdiction over child support modification proceeding, despite the absence of an underlying District Court proceeding to modify custody) and, even assuming that such statutory language did deprive the Defendant ALJs and Child Support Magistrates of jurisdiction over the child support proceedings, it would certainly be insufficient to establish that they acted "in the complete absence of all jurisdiction." See, Edlund v. Montgomery, supra at 990 ("This narrow exception to the doctrine of judicial immunity applies only when a judge hears a case that is clearly beyond her judicial authority, such as a probate judge trying a criminal case."), citing Stump v.

---

> another party containing one or more of these issues if it is pending in the district court.

Similarly, Section 484.702, Subdivision 1(c) provides:

> This section does not prevent a party, upon timely notice to the public authority, from commencing an action or bringing a motion in district court for the establishment, modification, or enforcement of support, or enforcement of maintenance orders if combined with a support proceeding, where additional issues involving domestic abuse, establishment or modification of custody or visitation, or property issues exist as noticed by the complaint, motion, counter motion, or counter action.

Sparkman, supra at 357, and n. 7. Therefore, we find that the Plaintiff's individual capacity claims against each of the State Defendants, with the exception of Weaver and Campion, are barred by the doctrine of judicial immunity.[11]

d. The County Defendants' Assertion of Qualified Immunity. Under the doctrine of qualified immunity, State actors are protected from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1102 (8th Cir. 2004), quoting Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000), quoting, in turn, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To survive summary judgment based on the affirmative defense of qualified immunity, a claimant must '(1) assert a violation of a constitutional right;[12] (2) demonstrate that the

[11]The State Defendants also assert that Weaver is entitled to quasi-judicial immunity because, in suspending the Plaintiff's driver's license, he was acting pursuant to a valid Court Order. See, Patterson v. Von Reisen, 999 F.2d 135, 1240 (8th Cir. 1994). While the Plaintiff's Complaint contains somewhat conflicting allegations, construed liberally, the Plaintiff has alleged that Weaver suspended his license without a Court Order, and as such, we decline to afford Weaver quasi-judicial immunity at this juncture. Nevertheless, because the claim against Weaver is clearly barred by the Rooker/Feldman doctrine, the absence of immunity does not permit the Plaintiff to proceed with his claim against Weaver.

[12]We address the issue of qualified immunity in the interests of completeness, as we find no constitutional violations in the first instance. If we err in that respect, we nonetheless conclude that the County Defendants possess qualified immunity for

alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.'" Gatlin ex rel. Gatlin v. Green, 362 F.3d 1089, 1093 (8th Cir. 2004), quoting Omni Behavioral Health v. Miller, 285 F.3d 646, 651, quoting, in turn, Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996); see also, Lawyer v. Kernodle, 721 F.2d 632, 635 (8th Cir. 1983). For a right to be considered clearly established, the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When qualified immunity is asserted in a Section 1983 action, we "must first consider the threshold question of whether, construed in a light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." Andrews v. Fuoss, 417 F.3d. 813, 816 (8th Cir. 2005), quoting Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005); see Wilson v. Layne, 526 U.S. 603 (1999) [citations omitted]. "Only then do we ask whether that right was

---

reasons we detail in the text of this section.

clearly established at the time of the alleged violation." Id.; see Coonts v. Potts, 316 F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Here, the County Defendants are clearly entitled to qualified immunity, as their alleged conduct does not constitute a constitutional violation. Further, to the extent that any constitutional violation could be asserted, the circumstances presented would have allowed the Defendants to reasonably believe that their participation in the expedited child support processes, as well as the process which resulted in the suspension of the Plaintiff's commercial driver's license, did not amount to a constitutional violation. Cf., Petschen v. Governor of State of Minnesota, supra; Thompson v. Ellenbecker, supra; State v. Leuvoy, supra; Amunrud v. Board of Appeals, supra; Tolces v. Trask, supra; State v. Beans, supra. Therefore, even if a constitutional violation could be found, the County Defendants would be entitled to qualified immunity and, as such, dismissal would be appropriate on that basis as well.

B. The Plaintiff's Motion for a Default Judgment Against Lindemoen.

According to Rule 55(a), Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." A Judgment of default

may, thereafter, be entered on application to the Court. Rule 55(b)(2), Federal Rules of Civil Procedure. "Rule 55(b)(2) commits the entry of a default judgment to the discretion of the district court." United States v. Woods, 2004 WL 790332 at *3 (D. Minn., March 31, 2004), citing FTC v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977), see, Harris v. St. Louis Police Dept., 164 F.3d 1085, 1086 (8th Cir. 1998).

Although Lindemoen was served with a Summons and Complaint on April 7, 2005, see, Docket No. 56, she did not file any Answer or other responsive pleading until August 15, 2005, which was well after the Clerk of Court had already issued an Entry of Default against her. Therefore, Lindemoen is in default. See, DirectTV, Inc. v. Sheffield, 2005 WL 563108 at *2 (D. Minn., March 8, 2005); Rule 55(a), Federal Rules of Civil Procedure. However, a party's default does not automatically entitle the plaintiff to a Default Judgment, under Rule 55. Rather, "[i]f the court determines that a defendant is in default, the factual allegations of the complaint will be taken as true." F.T.C. v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1297 (D. Minn. 1985), citing Thompson v. Wooster, 114 U.S. 104, 110 (1884); see United States v. Woods, supra at *3; 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure §2688 (3d ed. 2004); Rule 8(d), Federal Rules of Civil

Procedure. In this respect, the Court of Appeals for the Fifth Circuit has reasoned as follows:

> [A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. As the Supreme Court stated in the "venerable but still definitive case" of Thomson v. Wooster: a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill." 114 U.S. at 113, 5 S.Ct. at 792, 29 L.Ed. at 108. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. Thomson v. Wooster; Ohio Central Railroad Company v. Central Trust Company of New York[, 133 U.S. 83 (1890)]; 10 Wright & Miller, Federal Practice and Procedure 282.

Nishimatsu Construction Company, Ltd. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); see, Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994)("The entry of a default order does not * * * preclude a party from challenging the sufficiency of the complaint."); Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 15 (1st Cir. 1992); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988), cert. denied 493 U.S. 858 (1989); see also, Edwards v. Culbertson Law Offices, 2001 WL 1640104 at *3 (D. Minn., December 7, 2001)("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."), aff'd, 62 Fed.Appx. 129, 2003 WL 21007147 (8th Cir., May 6, 2003), citing 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure §2688 (3d ed. 2004)

Furthermore, if the Court determines that a Default Judgment is improper because the Complaint fails to state a claim upon which relief can be granted, the Court may dismiss, sua sponte, the Complaint under Rule 12(b)(6), Federal Rules of Civil Procedure. See, Edwards v. Culbertson Law Offices, 62 Fed.Appx. 129, 2003 WL 21007147 (8th Cir., May 6, 2003), citing Smith v. Boyd, 945 F.2d 1041, 1042-1043 (8th Cir. 1991)("We now hold that a district court sua sponte may dismiss a complaint under Rule 12(b)(6) so long as the dismissal does not precede service of process."); see, e.g., Willis v. Centennial Mortgage & Funding, Inc., 2004 WL 2075558 at *15 (D. Minn., September 16, 2004).

Here, the Plaintiff alleges that Lindemoen was a willing participant and co-conspirator in the proceedings which resulted in the issuances of child and medical support Orders against him. The Plaintiff further contends that Lindemoen benefitted from those proceedings because she was able to avoid her child and medical support obligations, and because Lindemoen was able to avoid the same occupational restrictions as the Plaintiff. According to the Plaintiff, Lindemoen was able to purchase a house, at a reduced payment, and Anoka County collected debts on her behalf.

The Plaintiff's Section 1983 claim against Lindemoen is fatally defective in that he has failed to allege any facts which might establish that Lindemoen is a State actor, or that she somehow violated his Constitutional rights. As an initial matter, Section 1983 only applies when the actions complained of were committed by persons "under color of state law." We previously addressed the application of the "under color of state law" requirement to private party defendants in Steele v. City of Bemidji, 114 F.Supp.2d 838, 845-846 (D. Minn. 2000), aff'd in pertinent part, 257 F.3d 902, 906 (8th Cir. 2001), where we observed, as follows:

> As a result of the "State action" requirement of Section 1983, the injuries, at issue, must have been caused by the exercise of some right, or privilege, that was created by the State, by a rule of conduct imposed by the State, or by a person for whom the State is responsible. Parker v. Boyer, 93 F.3d 445, 448 (8th Cir. 1996). Although "State action," for Section 1983 purposes, is ordinarily committed by officers and employees of a State governmental agency, Courts have, nonetheless, found that private parties can commit "State action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). The test employed, in determining whether a private citizen's conduct constitutes "State action," is one of ascertaining whether the private citizen's conduct can be "fairly attributable to the State." Id.

In order to impose upon a private party the requirements of Section 1983, the plaintiff must allege that the "claimed constitutional deprivation resulted from the exercise of

a right or privilege having its source in state authority, * * * and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991), citing Luger v. Edmonson Oil Co., 457 U.S. 922, 929-932 (1982).

"[I]n determining whether a particular action or course of conduct is [State action], it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional governmental function; and whether the incident is aggravated in a unique way by the incidents of governmental authority." Dean v. Olibas, 129 F.3d 1001, 1005 (8th Cir. 1997), quoting Edmonson v. Leesville Concrete Co., supra at 621-622.

The Plaintiff's Amended Complaint is devoid of any allegation which would support a finding that Lindemoen was acting under the color of State law. Specifically, while the Plaintiff has alleged that Lindemoen was a "willing participant and co-conspirator" in the proceedings which resulted in the child and medical support awards against the Plaintiff, the United States Supreme Court has instructed that "merely resorting to the courts, and being on the winning side of a lawsuit does not make a party a co-conspirator, or joint actor with the judge." Dennis v. Sparks, 449 U.S. 24, 28 (1980). Moreover, to the extent that the Plaintiff has alleged that

Lindemoen was implicated in a Section 1983 conspiracy, because of some complicity in the decisions of the County Defendants to enforce the Plaintiff's child support obligations, the claim fails for reasons addressed by the Supreme Court in Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981). As the Court noted in Leeke, "[a] private citizen * * * has no judicially cognizable right to prevent state officials from presenting information, through intervention of the state solicitor, that will assist the magistrate in determining whether to issue the arrest warrant." Id. at 87. Unlike the "state solicitor" in Leeke, Lindemoen is not a "State actor," and the mere fact that she may have assisted the County prosecutors in the enforcement of the Plaintiff's support obligations -- if, in fact she did -- would not generate a Section 1983 claim.

Therefore, in the absence of any allegations to support the Plaintiff's conclusory assertions, the Plaintiff cannot prove a "a mutual understanding" between Lindemoen, and any of the State or County Defendants, to engage in conduct violative of the Constitution. See, Tahfs v. Proctor, 316 F.3d 584, 592 (6th Cir. 2003) (unverifiable allegations of "corruption," concerning a series of State Court decisions that were not in her favor, were insufficient to establish that a private party was acting "under color of state law," for the purposes of Section 1983); see also, Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005)("Under [Section] 1983, a plaintiff must establish not

only that a private actor caused a deprivation of a constitutional right, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objectives of the conspiracy."), citing Adickes v. S.H. Kress & Co., supra at 152.

The Plaintiff's Section 1983 claim against Lindemoen is also deficient in that he has failed to allege any violation of the United States Constitution, or Federal law, by Lindemoen. Notably, for reasons that were previously discussed, the Plaintiff's allegation, that Lindemoen participated in the processes which resulted in the child and medical support Orders, does not give rise to a constitutional violation. Moreover, because the Plaintiff's claims against Lindemoen appear to be based entirely on her participation in the contested proceedings, we also find that the Rooker/Feldman doctrine constitutes a bar to the exercise of jurisdiction over the Plaintiff's claims against her. See, Brackman v. Indiana, supra at 991-92. Therefore, because the Plaintiff has failed to state any claim against Lindemoen, upon which relief can be granted, and because the Rooker/Feldman doctrine precludes our exercise of jurisdiction over the Plaintiff's claims against her, we recommend that the Plaintiff's Claims against Lindemoen be dismissed, and that the Plaintiff's Motion for a Default Judgment be denied as moot.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Motion of the Defendants Charles Weaver, Michael Campion, Beverly Anderson, Kim Brandell, Susan Fallek-Rogers, Jill Prohofsky, Colia Ceisel, and Susan Myklebye-Williams to Dismiss [Docket No. 43] be granted.

2. That the Motion of the Defendants Janice Allen, Dorrie Estebo, Bethany Lindberg, Kay Gavinski, Robert Tipp, and Kelly O'Brien [Docket No. 31] be granted.

3. That the Plaintiff's Motion for a Default Judgment Against the Defendant Betty Jean Lindemoen [Docket No. 77] be denied, as moot.

4. That the Plaintiff's Complaint be dismissed as to each of the named Defendants.

Dated: August 3, 2006

s/Raymond L. Erickson

Raymond L. Erickson
CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than August 18, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 18, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.